UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| COPAN ITALIA S.P.A., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PURITAN MEDICAL PRODUCTS<br>COMPANY LLC, et al.,<br><br>    Defendants. | 1:18-cv-00218-JDL |

**ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS**

Defendants Puritan Medical Products Company LLC and Puritan Diagnostics LLC (together, "Puritan") have moved to dismiss the indirect patent infringement claims asserted by Plaintiffs Copan Italia S.p.A. and Copan Diagnostics, Inc. (together, "Copan") for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). In the alternative, Puritan moves for "a more definite statement" of the indirect infringement claims under Fed. R. Civ. P. 12(e). ECF No. 18 at 15. For the reasons explained below, I deny Puritan's motion.

### I. FACTUAL BACKGROUND

This case concerns "flocked" swabs that are used to collect and transport biological specimen samples for analysis. The complaint (ECF No. 1) alleges the following facts, which I treat as true for purposes of the motion to dismiss.

Before the early 2000s, the standard tool for collecting and transporting biological specimen samples was a fiber swab similar in construction to a Q-tip: a

1

small rod with fibers wrapped around the tip. Copan claims that in 2003 it invented and released the industry's first "flocked" swabs. Flocked swabs consist of a rod several inches long with a layer of short fibers deposited onto its tip so that the fibers stand perpendicular to the rod. "Flocking" is the process of depositing the fibers electrostatically. In the years since they were first released, flocked swabs have grown in popularity as compared to traditional fiber swabs because of their documented benefits in the absorption, transport, and elution (release) of biological specimen samples.

Puritan began selling its own flocked swabs in 2011. The flocked swabs that Puritan manufactures, like Copan's, consist of rods with a layer of small fibers on the tip of one end, which fibers are deposited on the tip by a process of electrostatic flocking. In a blog post on its website, Puritan instructs customers to use its flocked swabs to collect biological specimens. Puritan also advertises that its flocked swabs have the "[h]ighest performing collection and elution[,]" ECF No. 1 at ¶ 100, and a later blog post similarly claims "greater sample absorption, retention, and faster release." *Id.* at ¶ 107. In addition, Puritan has funded several studies on the effectiveness of its flocked swabs for collecting and transporting biological specimens for analysis when compared to other flocked swabs.

When Puritan began selling its flocked swabs in 2011, Copan had at least one patent application for its flocked swab technology pending in the United States. On December 22, 2011, Puritan published a press release acknowledging that the U.S. patent examiner had allowed certain claims in Copan's Patent Application No.

10/543,873. The following day, Puritan's outside counsel sent a letter to a general manager at Copan that cited Patent Application No. 10/543,873 and stated that Puritan had "reviewed all pending published patent applications assigned to Copan Italia S.P.A. and Copan Innovation Limited." ECF No. 1 at ¶¶ 14, 63.

Copan's Patent Application No. 10/543,873 was ultimately approved and issued as Patent No. 8,114,027 on February 14, 2012. Between November 2012 and November 2015, four additional U.S. patents were issued to Copan for its flocked swab design and the method for using a flocked swab to collect, transport, and release a biological specimen sample for analysis. The patents-in-suit include Copan's five U.S. patents issued between 2012 and 2015: Patent No. 8,114,027 ("the '027 patent"), Patent No. 8,317,728 ("the '728 patent"), Patent No. 8,979,784 ("the '784 patent"), Patent No. 9,011,358 ("the '358 patent"), and Patent No. 9,173,779 ("the '779 patent"). In 2016, after the five patents-in-suit had issued, Puritan sent a letter to one of its distributors acknowledging that "Copan . . . has several U.S. Patents." ECF No. 1 at ¶ 65.

Copan's complaint contains eleven counts alleging three types of claims: false advertising (Counts I and II), direct patent infringement (Counts III, V, VII, VIII, and X), and indirect patent infringement (Counts IV, VI, IX, and XI). Shortly after Copan filed its complaint, Puritan moved to dismiss the indirect patent infringement counts for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In the alternative, Puritan requests "a more definite statement of a pleading" under Fed. R. Civ. P. 12(e) on the

basis that the indirect infringement claims in the complaint are "so vague or ambiguous that [Puritan] cannot reasonably prepare a response." ECF No. 18 at 15.

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Standard of Review

To survive Puritan's Rule 12(b)(6) motion to dismiss, the indirect infringement counts in the complaint must be supported by "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the facts pled in the complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Because "[a] motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law," the law of the regional circuit applies. *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1355-56 (Fed. Cir. 2007); *accord In re Bill of Lading Transmission & Processing Sys. Patent Litig.,* 681 F.3d 1323, 1331 (Fed. Cir. 2012).

The First Circuit has laid out a two-step process for evaluating a Rule 12(b)(6) motion: first, "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,]" and second, "take the complaint's well-pled . . . facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "There need not be a one-to-one relationship between any single allegation and a necessary element

4

of the cause of action. What counts is the 'cumulative effect of the [complaint's] factual allegations.'" *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011)).

**B.     Legal analysis**

Indirect patent infringement can take two forms: induced infringement or contributory infringement. *See* 35 U.S.C.A. § 271(b)-(c) (West 2018). Copan's complaint alleges both induced and contributory infringement of four of the five patents-in-suit: the '027 patent, the '728 patent, the '358 patent, and the '779 patent. Copan does not allege indirect infringement of the '784 patent. Puritan's motion argues that the complaint asserts no more than rehashed elements of each cause of action and legal conclusions as to both theories of recovery. I address each form of indirect patent infringement asserted in the complaint.

**1.     Induced Infringement**

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C.A. § 271(b). To state a claim for induced infringement, a plaintiff must allege (1) knowledge of the patent, (2) specific intent that another party infringe the patent, and (3) knowledge that the induced acts constitute infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018). The language in each induced infringement claim in Counts IV, VI, IX, and XI closely mirrors the statutory language of § 271(b) and the other required elements for induced infringement.

5

Accordingly, these allegations state legal conclusions and must be disregarded for purposes of determining the sufficiency of the complaint. *See Schatz*, 669 F.3d at 55.

Turning to the first element of induced infringement, the parties dispute whether Puritan's alleged knowledge of Copan's patent applications gives rise to an inference that Puritan had knowledge of the patents-in-suit. Puritan asserts that there is a settled bright-line rule that pleading knowledge of a patent application is insufficient. In its decision in *State Industries, Inc. v. A.O. Smith Corporation*, 751 F.2d 1226, 1236 (Fed. Cir. 1985), the Federal Circuit reasoned that knowledge of a patent application was not sufficient to satisfy the knowledge element for willful patent infringement:

> A "patent pending" notice gives one no knowledge whatsoever. It is not even a guarantee that an application has been filed. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.

*Id.* Subsequent cases have relied on the reasoning in *State Industries* to support a rule that "plaintiffs [must] plead knowledge of the actual patents at issue and not mere knowledge of the pendency of patent applications." *LML Holdings, Inc. v. Pac. Coast Distrib. Inc.*, No. 11-CV-06173 YGR, 2012 WL 1965878, at *4 (N.D. Cal. May 30, 2012); *see also Boundaries Sols., Inc. v. CoreLogic, Inc.*, No. 5:14-cv-00761-PSG, 2014 WL 7463708 at *3 (N.D. Cal. Dec. 30, 2014) (quoting *LML Holdings* rule); *Verint Sys. Inc. v. Red Box Recorders Ltd.*, No. 14-cv-5403 (KBF), 2016 WL 7177844 at *2 (S.D.N.Y. Dec. 7, 2016) (quoting *State Industries* to support rule that "[k]nowledge of a patent application is not enough" for a finding of induced infringement).

The Federal Circuit, however, recently indicated that the concerns expressed in *State Industries* "are no longer valid when patent applications and realtime prosecution activity are published[,]" so that patent applications are no longer "secret." *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 n.4 (Fed. Cir. 2018). In 1999, Congress enacted 35 U.S.C. § 122(b)(1)(A), "which provides for the publication of patent applications filed on or after November 29, 2000, eighteen months after the effective filing date of the application," and therefore gives the public access to far more information than just a "patent pending" notice. *Id*. The Federal Circuit also emphasized in *WCM Industries* that "*State Industries* does not establish a per se rule . . . but rather, 'is in harmony with our prior and subsequent case law, which looks to the totality of the circumstances presented in the case.'" *Id.* at 970 (quoting *Shiley, Inc. v. Bentley Labs, Inc.*, 794 F.2d 1561, 1568 (Fed. Cir. 1986)).

Here, the complaint does allege Puritan's knowledge of at least one of Copan's patent applications and other facts that permit the reasonable inference that Puritan had knowledge of Copan's U.S. patents. The complaint alleges that in December 2011, Puritan identified Copan's Patent Application No. 10/543,873 in both a press release and a letter that it had sent to Copan. The letter allegedly states that Puritan had "reviewed all pending published patent applications assigned to Copan Italia S.P.A. and Copan Innovation Limited." ECF No. 1 at ¶ 63. Puritan also sent a letter to one of its distributors in 2016, after the five patents-in-suit had issued, acknowledging that "Copan . . . has several U.S. Patents." ECF No. 1 at ¶ 65. These communications, coupled with the allegation that the parties are competitors in what

7

is a specialized market, reasonably permit an inference that Puritan was keeping up to date on the status of Copan's patent applications. Viewing the allegations in the light most favorable to Copan as the non-moving party, the complaint plausibly pleads knowledge of the patents-in-suit.

To satisfy the second element of induced infringement, the complaint must allege facts demonstrating that the defendant specifically intended that a third-party infringe the patent. "[T]he requisite intent to induce infringement may be inferred from all of the circumstances." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016) (quoting *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008)). Thus, "active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe . . . ." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (internal alteration, citation, and quotation marks omitted).[1] "For pleading purposes, circumstantial evidence often suffices to clarify 'a protean issue such as . . . intent.'" *Rodríguez-Reyes*, 711 F.3d at 56 (quoting *Anthony v. Sundlun*, 952 F.2d 603, 605 (1st Cir. 1991)).

The complaint alleges that Puritan advertised and instructed that its flocked swabs are used to perform the method claimed in Copan's patents: collecting, transporting, and releasing biological specimens for analysis. *See Grokster*, 545 U.S.

---

[1] Puritan argues that *Grokster* does not apply here because it is a copyright case. Although the issue in *Grokster* was copyright infringement, the Court devoted part of its opinion to discussing patent law principles and ultimately adopted a patent doctrine in the copyright infringement context. *Id.* at 936-37.

8

at 936. Among the publicly available materials described in the complaint are two of Puritan's advertisements, which state that Puritan's flocked swabs have the "[h]ighest performing collection and elution," and that "our flocked specimen collection devices provide the most efficient collection and elution on the market." ECF No. 1 at ¶¶ 100, 128. Advertising an infringing use may constitute an "active step[] taken to encourage direct infringement," *Grokster*, 545 U.S. at 936, and suffices to show, albeit indirectly, an intent that the product should be used to infringe. Accordingly, the second element of induced infringement is adequately pleaded.

Finally, the complaint also sufficiently pleads the third element of induced infringement: knowledge that the induced acts constitute patent infringement. Copan's complaint details long-standing communication and litigation between the two parties surrounding their respective flocked swabs, beginning around 2011 and spanning several countries. In 2013, after Copan and Puritan had become involved in litigation in Germany, a Puritan customer service representative told a potential customer in Italy that "[d]ue to Copan's patent on flock swabs, we cannot sell our products into Italy." ECF No. 1 at ¶¶ 64, 67. Given Puritan's familiarity with Copan and Copan's products, the alleged facts support an inference that Puritan knew that selling their flocked swabs and encouraging others to use the swabs to collect biological specimens for testing would constitute infringement of the claimed methods in Copan's patents.

For the reasons discussed above, I conclude that the complaint states a plausible claim to relief for induced infringement. Puritan's motion to dismiss is therefore denied as to those claims.

**2. Contributory Infringement**

As relevant here, contributory infringement occurs when a party (1) "sells within the United States . . . [an] apparatus for use in practicing a patented process,"[2] (2) which "constitut[es] a material part of the invention," (3) "knowing the same to be especially made or especially adapted for use in an infringement of such patent," and (4) the apparatus is "not a staple article or commodity of commerce suitable for substantial noninfringing use . . . ." 35 U.S.C.A. § 271(c). "Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 135 S. Ct. at 1926. It does not, however, require proof of an intent that the activity would cause infringement. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1381 (Fed. Cir. 2017).

---

[2] Puritan argues that the facts pled in the complaint do not satisfy the first element of contributory infringement because a defendant must "sell, offer to sell, or import a 'component' used in a patented machine, instead of the entire machine itself." ECF No. 29 at 10. But § 271(c) covers either "a component of a patented machine . . . or a material or apparatus for use in practicing a patented process . . . ." 35 U.S.C.A. § 271(c); *see also Arris Grp., Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1376 (Fed. Cir. 2011) (noting that § 271(c) "covers both contributory infringement of system claims and method claims.").

Each of the four patents for which Copan alleges contributory infringement includes an independent claim for the "method of collecting a biological specimen to be analyzed" using a flocked swab. ECF No. 1-5 at 8; *see also* ECF No. 1-1 at 6-7; ECF No. 1-2 at 7; ECF No. 1-4 at 8. Thus, Copan may plead contributory infringement by alleging that Puritan sells a material or apparatus for use in practicing its patented process. *See Artrip v. Ball Corp.*, No. 1:14CV00014, 2017 WL 3669518, at *9 (W.D. Va. Aug. 24, 2017) ("[C]laims that recite a 'method' are properly treated as process claims." (citing *Arris Grp.,* 639 F.3d at 1376 n.9)).

The allegations in each contributory infringement claim stated in Counts IV, VI, IX, and XI of the complaint closely mirror the statutory language of § 271(c). Therefore, those allegations state legal conclusions and must be ignored in assessing the sufficiency of the complaint. *Schatz*, 669 F.3d at 55. But the complaint does allege facts that support each of the four required elements. First, Copan alleges that Puritan sells its flocked swabs in the United States, a claim that is bolstered by an alleged blog post on Puritan's website that asserts that the company can meet market needs more quickly than suppliers of flocked swabs located abroad because its products are manufactured in the United States. ECF No. 1 at ¶ 120. Second, it is apparent from Copan's patents, copies of which are attached to the complaint, that flocked swabs constitute a material part of the patented method. Third, as discussed above, Copan plausibly pleads that Puritan had knowledge of Copan's U.S. patents and knowledge of patent infringement by third parties. Therefore, the complaint adequately pleads the first three elements of contributory infringement.

The complaint also pleads sufficient facts to support a reasonable inference that Puritan's flocked swabs have no "substantial noninfringing use," as required by the fourth element. 35 U.S.C.A. § 271(c). "A substantial noninfringing use is any use that is 'not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" *Nalco Co.*, 883 F.3d at 1357 (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009)). "[T]he inquiry focuses on whether the accused products can be used for purposes *other than* infringement." *Bill of Lading*, 681 F.3d at 1338. Whether an apparatus is "suitable for substantial noninfringing

11

use" is a question of fact that "cannot be evaluated in a vacuum." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). Relevant considerations may include "the use's frequency, . . . the uses practicality, the invention's intended purpose, and the intended market." *Id.*

Because of "the difficulty of alleging enough facts to demonstrate a negative at th[e pleading] stage . . . numerous post-*Iqbal* cases have not required detailed factual allegations in support of a plaintiff's claim that a defendant's product lacks substantial noninfringing uses." *Conair Corp. v. Jarden Corp.*, No. 13-cv-6702 (AJN), 2014 WL 3955172, at *4 (S.D.N.Y. Aug. 12, 2014) (collecting cases). As long as that claim is not undermined by "allegations of other substantial non-infringing uses elsewhere in the [c]omplaint," a court may "draw a plausible inference of contributory infringement." *Driessen v. Sony Music Entm't*, No. 2:09-cv-0140-CW, 2013 WL 4501063, at *2 (D. Utah Aug. 22, 2013); *see also, e.g., Puget Bioventures, LLC v. Biomet Orthopedics LLC,* 325 F. Supp. 3d 899, 908 (N.D. Ind. 2018) (noting "the obvious difficulty plaintiffs would face in pleading a negative without the benefit of discovery."); *cf. Bill of Lading*, 681 F.3d at 1338 (concluding that plaintiff failed to state a claim for contributory infringement where plaintiff's own allegations made clear that defendant's products had multiple noninfringing uses).

Here, the complaint alleges that Puritan's flocked swabs "are not staple articles or commodities of commerce suitable for a substantial noninfringing use." ECF No. 1 at ¶¶ 155, 168, 187, 200. In addition, the complaint alleges that Puritan advertises and instructs that its flocked swabs be used to collect, transport, and

12

release biological specimens for analysis, and that Puritan has funded several studies on the effectiveness of its flocked swabs when used for that purpose. Viewing the complaint in the light most favorable to Copan as the non-moving party, it is reasonable to infer from these alleged facts that Puritan's flocked swab is a specialty item that is designed and sold for use in the collection, transport, and release of biological specimen samples, and that it is not suited for a substantial noninfringing use. Furthermore, Copan has not alleged any facts that undermine the assertion that Puritan's flocked swabs have no substantial noninfringing uses.

I therefore conclude that the complaint states a plausible claim to relief for contributory infringement and deny Puritan's motion to dismiss as to those claims.

### III. MOTION FOR A MORE DEFINITE STATEMENT

As an alternative to dismissal for failure to state a claim, Puritan moves for a more definite statement of the indirect infringement claims in the complaint under Fed. R. Civ. P. 12(e). Based on the specific factual allegations discussed above that support the indirect infringement claims, I conclude that those claims are not "vague or ambiguous" such that Puritan "cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also Haghkerdar v. Husson Coll.*, 226 F.R.D. 12, 14 (D. Me. 2005) ("The motion is granted sparingly since it is not to be used as a substitute for discovery in trial preparation . . . but is to be used only when a pleading is too general. Rule 12(e) motions are designed to strike at unintelligibility, rather than at lack of detail in the complaint." (internal citations and quotation marks omitted)). Thus, I deny Puritan's alternative request for a more definite statement.

## IV.  CONCLUSION

For the above reasons, Puritan's motion to dismiss the indirect infringement claims and alternative request for a more definite statement of the indirect infringement claims (ECF No. 18) are **DENIED**.

**SO ORDERED.**

**Dated this 9th day of November, 2018.**

                                                    /s/ JON D. LEVY
                                                    **U.S. DISTRICT JUDGE**