**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| COPAN ITALIA S.P.A., and COPAN DIAGNOSTICS, INC.,     ) ) ) ) | |
|     Plaintiffs,     ) ) | Civil Action No. 1:18-cv-00218-JDL |
| v.     ) ) | |
| PURITAN MEDICAL PRODUCTS COMPANY LLC, PURITAN DIAGNOSTICS LLC, HARDWOOD PRODUCTS COMPANY LP, AND HARDWOOD PRODUCTS COMPANY LLC,     ) ) ) ) ) ) ) | |
|     Defendants.     ) ) | |

**PLAINTIFFS' MOTION TO AMEND SCHEDULING ORDER**

Pursuant to this Court's Order (ECF 202) issued September 13, 2021, Plaintiffs Copan Italia S.P.A. and Copan Diagnostics, Inc. (collectively, "Copan" or Plaintiffs"), by and through their counsel of record, hereby submit the following Motion to Amend Scheduling Order. The parties in a Joint Status Report (ECF 190) concluded that it was appropriate to lift the stay and that the litigation be resumed. The Court accepted that suggestion and directed the parties to submit a proposed scheduling order by July 21, 2021, which deadline was later extended until July 28, 2021 (ECF 196), August 27, 2021 (ECF 198), then to September 10, 2021 (ECF 200), and further to September 17, 2021 (ECF 202).  Two days ago, on the afternoon of September 15, 2021, counsel for Puritan informed counsel for Copan that "we think that our client will not agree to further extensions of the stay, however we would keep discussing settlement while the Court sorts out the competing schedules." *See* Declaration of Michael C. Newman in support of Plaintiffs' Motion to

1

Amend ("Newman Decl."), Ex. A. The parties met and conferred twice this afternoon, September 17, 2021, and were unable to come to an agreement. Newman Decl., ¶4.

Through the meet-and-confer process, the parties were able to find some agreement. First, the parties agree to complete expert discovery by March 15, 2022. *Id.* The parties further agree to the trial ready date, which will be determined by the Court. *Id.* The parties also appear to agree that some discovery will be necessary, and that some expert reports will be required to be supplemented to account for the new discovery. *Id.* For example, the parties appear to agree that, should Puritan plead an affirmative defense under 28 U.S.C. § 1498(a), Copan would be entitled to discovery regarding that defense. *Id.* The parties also agree that some damages-related discovery is necessary, and that damages expert reports should be supplemented to account for the new information. *Id.* However, the parties were unable to agree on the scope of fact discovery and expert report supplementation. *Id.*

Thus, the parties' dispute is less about the schedule itself, and more about what the parties are allowed to do prior to the expert discovery cutoff. Copan's proposed schedule allows for a limited reopening of fact discovery regarding the significant changes caused by the unprecedented global Covid-19 pandemic that acutely affected the parties to this lawsuit, particularly with respect to the accused products. Specifically, Copan proposes that fact discovery be opened to allow for discovery related to: (1) any new affirmative defenses raised by Puritan under 28 U.S.C. § 1498(a) related to its new government contracts for flocked swabs, (2) new facts related to damages calculations such as updated sales numbers and new third-party licenses to the asserted patents, (3) new facts related to secondary factors of nonobviousness in light of wide industry praise of the success and importance of flocked swabs since the beginning of the pandemic, and (4) Puritan's multiple new facilities that did not exist prior to the pandemic, and their associated flocking

processes. Copan's proposed schedule also allows for the parties' experts to supplement their respective expert reports to account for the new facts.

## I.    Proposed Schedule

Pursuant to this Court's Order (ECF 202), Copan moves to amend the scheduling order as indicated below:

| Copan's Proposed Schedule | |
|---|---|
| **Event** | **Deadline** |
| Motion to Amend Pleadings | Oct. 15, 2021 |
| Deadline to Complete Fact Discovery | Jan. 7, 2022 |
| Updated Expert Reports | Jan. 28, 2022 |
| Updated Rebuttal Reports | Feb. 11, 2022 |
| Deadline to Complete Expert Discovery | Mar. 15, 2022 |
| Deadline for Notice of Intent to File Motion for Summary Judgment, and Need for Pre-Filing Conference per Local Rule 56(h) | Mar. 29, 2022 |
| Deadline for Filing of All Dispositive Motions and *Daubert*/*Kumho* Motions | Apr. 15, 2022 |
| Responses to Dispositive Motions and *Daubert*/*Kumho* Motions | May 6, 2022 |
| Trial-ready date | Per Court |

## II.    Argument

Federal Rule of Civil Procedure 26(f) allows courts to amend discovery orders where justice so requires. Fed. R. Civ. P. 26(f). "Federal trial courts enjoy broad discretion in managing the pace of pretrial proceedings, including the timing of discovery." *Vineberg v. Bissonnette*, 548 F.3d 50, 54 (1st Cir. 2008). In exercising its discretion, a court considers any extenuating circumstances and the sufficiency of the time that was allowed for discovery, whether the party seeking additional discovery demonstrates "relevant leads" that would result from reopening discovery, and whether additional discovery would delay the proceedings. *Id.* at 55.

A motion to amend that is filed after the deadline requires an amendment of the scheduling order. *Stile v. Somerset Cty.*, No. 1:13-cv-00248-JAW, 2018 U.S. Dist. LEXIS 25572, *10 (D. Me. Feb. 16, 2018). To obtain an amendment of the scheduling order, a party must demonstrate good cause. *Id.; Johnson v. Spencer Press of Maine, Inc.*, 211 F.R.D. 27, 30 (D. Me. 2002); Fed. R. Civ.

P. 16(b)(4). A court's decision on good cause "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Stile*, 2018 U.S. Dist. LEXIS 25572, *10 (citing *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)). "Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy.'" *Steir*, 383 F.3d at 12 (quotation omitted). Ultimately, it falls to the court's discretion whether to grant a motion to amend, and that discretion should be exercised on the basis of the particular facts and circumstances of the case. *Stile*, 2018 U.S. Dist. LEXIS 25572, *10.

### A.    Copan has good cause for seeking additional discovery

The world is not the same as it was a year-and-a-half ago when this case was stayed, particularly for the parties to this litigation. Good cause for reopening discovery exists here due to the extreme and extenuating circumstances of the Covid-19 pandemic. *See Vineberg*, 548 F.3d at 54. Since the Court ordered a stay on May 18, 2020, defendant Puritan has morphed from a company with one production facility to a company with four, at least half of which are currently used to manufacture flocked swabs. *See* Newman Decl., Ex. B ("In addition to its original production facility in Guilford, Puritan has two manufacturing plants in Pittsfield, one that produces foam swabs and another that makes flocked swabs. The Tennessee plant will be the company's fourth…."). Indeed on the very day that the parties served their rebuttal expert reports on each other on May 4, 2020, Puritan announced that it had just received over $75 million dollars from the federal government to build its first new plant in Pittsfield, Maine. *See id.*, Ex. C ("Puritan Medical Products announced Monday that its plans to build a new manufacturing facility in Pittsfield where it will produce flocked swabs used in COVID-19 testing."). This was just the beginning. Shortly thereafter, Puritan built a new plant in Pittsfield, Maine to make foam swabs

4

and by October 2020, Puritan had announced plans to build a second plant in Pittsfield, with this one being devoted to the production of flocked swabs. *See id.*, Ex. D ("In August, Puritan was awarded the additional $51.2 million, to expand its existing COVID-19 flock tip testing swab production facilities, under the CARES Act."). Puritan also used government money to improve its existing Guilford facility which also produces flocked swabs, and to build out a new facility in Orlinda, Tennessee. *See id.*, Exs. D and E.

None of this could have been predicted, even at the time the parties jointly moved to stay this litigation due to the pandemic, and this is Copan's first opportunity to seek additional discovery. Puritan has grown tremendously in a very short period of time fueled by unprecedented demand and outside government money directed toward mass production of diagnostic testing swabs. Puritan's newfound prominence has received national attention. Bloomberg Business ran a cover story on Puritan exploring the pros and cons of the country becoming increasingly dependent on one company for the manufacturing of Covid-19 testing swabs. *See* Newman Decl., Ex. E. But what is far more relevant to this proceeding is the fact that Puritan has built four new factories and greatly enhanced production capabilities at its headquarters in Guilford, Maine, ***all during the stay***. At least one, and maybe more, of these new plants mass-produce the flocked swabs Copan has accused of infringement. As the Bloomberg article notes, "Puritan's proprietary machines can produce about 2,000 flocked swabs a minute" and ***the new Pittsfield facility can make about "50 million flocked nasopharyngeal swabs a month."*** This sea-change no one could have predicted, and it is intimately connected to the issues in this case. As the Bloomberg article noted, when Admiral Brett Giroir, then an assistant secretary for health at the Department of Health and Human Services, had been put in charge of Covid-19 testing, he immediately raised concerns about the swabs. After reaching out to one medical supplier after another, he learned the following:

5

Giroir was further told that only two companies in the world make the swabs: Copan Diagnostics Inc. in northern Italy, an area then being ravaged by Covid-19, and a small, family-owned business in Maine called Puritan Medical Products Co. The swabs are highly specialized devices requiring precise manufacturing in proprietary machines to meet the strict regulatory requirements of hospitals. No other companies could quickly step in. *Id.*

From there, the federal government tried to meet demand by first having the Air Force fly millions of flocked swabs from Copan in Italy to the United States. *Id.,* Ex. F. The government also reached out to Puritan and financed a tremendous expansion of Puritan's supply capabilities. As Puritan put it in one of its blogs:

> Puritan is one of the world's two largest manufacturers of the specialized swab most often used for COVID-19 testing. In response to heightened demand for the product, Puritan reached full production capacity shortly after the pandemic began. President Trump's use of the Defense Production Act earlier this spring resulted in Puritan expanding production of COVID-19 test swabs at a new facility in Pittsfield, Maine, which is scheduled to open on July 1st. *Id.,* Ex. G.

While the federal government provided $10 million to Copan to build out its production facility in Puerto Rico, it was Puritan who received a windfall.  Bloomberg estimated that Puritan's revenue has likely doubled due to these government contracts which at the time, were reportedly worth more than $400 million (that number was previously reported as being $250 million and keeps going up as new developments are reported). Puritan has probably benefitted from the pandemic more than any other medical supplier, and even Puritan agrees that discovery should be reopened to accommodate at least a recalculation of damages.  But the need to reopen discovery is also relevant to other central issues:

- **Secondary indicia of nonobviousness**: Copan is relying on secondary indicia and the new developments since the pandemic began greatly support the unique nature and nonobviousness of the patented flocked swabs. This is borne out by the U.S. government sending the air force to retrieve flocked swabs from Copan in Italy as

well as all of the funding and support provided to Puritan to mass-produce flocked swabs domestically.

- **Infringement**: Immediately prior to the stay, Puritan submitted two technical expert reports that asserted that the defendant did not infringe any claim because of its purportedly custom-made flocking machines and processes at the Guilford plant in Maine. In summary, Puritan asserted that the specific machinery and protocols used to make flocked swabs are unique and do not meet certain claim limitations as a result. Puritan's non-infringement reports included a description of site visits to the Guilford plant to review flocking machines that were purportedly custom-built by a Puritan engineer. At that time, there was a more modest demand for diagnostic swabs and only the Guilford facility made flocked swabs for Puritan. Now Puritan has four plants to make diagnostic swabs, including the one in Pittsfield devoted to making flocked swabs. These plants were built and brought online in record time, and Copan is at least entitled to discovery to see whether the same type of custom-built machinery is being universally used by the defendant to make flocked swabs.

- **Damages**: Puritan is not even close to being the same company since the pandemic began and both parties recognize the need to supplement and update the current damages reports. Puritan has also relied on foam swabs as a non-infringing alternative, making all of the new foam swab production relevant to damages.

Copan requests that the Court reopen discovery to address these fundamental issues. In addition to damages, Copan seeks discovery of the activities taking place at the four new Puritan plants and expanded Guilford operation, including what types of swabs they each make, how

many, and the methods by which any diagnostic swabs are produced. Copan also requests that new evidence of secondary considerations arising after the stay was put in place on May 18, 2020, be admitted. Collectively, this will allow Copan's technical and damages experts to supplement their reports with this new and critical evidence.

**B.      Copan's proposed amended discovery schedule will not postpone a trial**

The timing and nature of Copan's motion to amend will not prejudice Puritan, and ***no postponement of the trial will occur***. Puritan's proposal includes the same trial schedule and also contemplates the reopening of discovery to update damages. The difference is that while Copan seeks discovery into Puritan's new activities that are directly related to infringement and validity, Puritan wishes to prevent that discovery and preclude Copan from exploring these new and potentially dispositive facts ***within the same time frame***. Thus, this is not a situation where re-opening discovery will significantly postpone the trial or create an alteration in trial tactics and strategy beyond where the new evidence leads.

**C.      Puritan will not be prejudiced**

Puritan will suffer no prejudice if the Court allows Copan to pull the curtain back and learn about narrow aspects of Puritan's new activities that have taken place during the pandemic. Puritan does not want Copan to learn about its new flocking machines, and is attempting to deprive Copan of the opportunity to test the veracity of Puritan's non-infringement defense with what is likely dispositive evidence. This comes after Puritan raised this non-infringement defense for the first time in rebuttal expert reports from two experts who each enjoyed direct access to Puritan's purportedly unique flocking machines. Copan also wishes to learn the circumstances surrounding Puritan's decisions to make one type of swab versus the other, as well as how each are used in practice. None of this evidence from these new plants existed before the stay because the facilities themselves did not exist, or had not been greatly improved and updated.

The additional costs associated with Copan's proposal are also marginal and well justified. While Copan's proposal will mean that the parties must spend additional money, the same is true for reopening discovery to review new financials and update expert reports on damages as Puritan proposes. The only difference is that Copan's proposal would also include discovery into the additional issues described above which is well justified and not excessive relative to Puritan's proposal. Indeed, counsel for defendant has indicated that it may pursue a claim of immunity from infringement under 28 U.S.C. § 1498(a) which immunizes private companies from infringement claims where the infringing activity is on behalf of the U.S. government. That discovery alone will require Copan to learn about the role of the federal government pursuant to the Defense Production Act (DPA) order, including the allocation of the funding provided to Puritan and what conditions were attached to Puritan's production of flocked diagnostic swabs. Copan also will need to learn if the government ordered Puritan to make infringing swabs and how many relative to Puritan's overall production in order to determine if Copan will need to pursue an ancillary suit against the United States in the U.S. Court of Claims. Any costs associated with Copan's proposal should be compared with the costs associated with all of the hoops that Copan will now need to jump through to be made whole. First however, Copan needs a fair opportunity to present its case in full. Puritan's proposal to reopen discovery limited only to a calculation of damages is self-serving and greatly prejudicial to Copan. Far from being prejudiced, it is Puritan who wishes to further injure Copan by keeping new and highly probative evidence from ever being part of the case.

**D.      Copan's proposal is very likely to uncover relevant information**

Copan is very likely and virtually guaranteed to uncover relevant information. Copan and the public's knowledge of Puritan's new facilities and accompanying new machines are not only "relevant leads," they are proof positive that there is new information that did not exist prior to the stay—and the pandemic—and that is directly tied to central issues of the case, including one of

Puritan's primary non-infringement positions. *See Vineberg*, 548 F.3d at 54. Moreover, there has ***never*** been a case with facts like this one involving a historic pandemic and a party receiving hundreds of millions of dollars in a little over a year to build out multiple factories and mass produce infringing materials while a case was stayed. *Compare with id.* Given the amount of money at stake, and the windfall that Puritan has already received due in large part to the mass production of accused flocked swabs, good cause exists.

### III.    Conclusion

Copan respectfully requests that along with the discovery accompanying Puritan's proposal, that the Court also amend the scheduling order in this matter in accordance with Copan's proposal to give Copan the opportunity to learn about the profound changes to Puritan's operations since the stay began and update relevant expert reports.

Dated: September 17, 2021

Respectfully submitted,

/s/ Richard P. Olson
Richard P. Olson
CURTIS THAXTER LLC
One Canal Plaza, Suite 1000
P.O. Box 7320
Portland, ME 04112-7320
(207) 774-9000
rolson@curtisthaxter.com

*Pro Hac Vice*:

James M. Wodarski
Michael C. Newman
Michael Renaud
Peter J. Cuomo
Daniel B. Weinger
Matthew A. Karambelas
Courtney Herndon
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
JWodarski@mintz.com
MCNewman@mintz.com
MTRenaud@mintz.com
PJCuomo@mintz.com
DBWeinger@mintz.com
MAKarambelas@mintz.com
CHerndon@mintz.com

*Counsel for Plaintiffs*
*Copan Italia S.p.A. and Copan Diagnostics, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2021, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will cause an electronic notice to be sent to all registered counsel of record.


Dated:   September 17, 2021

/s/ Richard P. Olson
Counsel for Plaintiffs
Copan Italia S.p.A. and Copan Diagnostics, Inc.