**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| COPAN ITALIA S.P.A., AND COPAN DIAGNOSTICS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PURITAN MEDICAL PRODUCTS COMPANY LLC, PURITAN DIAGNOSTICS LLC, HARDWOOD PRODUCTS COMPANY LP, AND HARDWOOD PRODUCTS COMPANY LLC, <br><br> Defendants. | C.A. No. 1:18-cv-218-JDL <br><br> JURY TRIAL DEMANDED |

## DEFENDANTS' PARTIAL MOTION TO DISMISS

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ................................................................................2

III. LEGAL STANDARDS..........................................................................................4

     A.  Dismissal Under Rule 12(b)(6) ....................................................................4

     B.  Judicial Notice...............................................................................................5

     C.  The PREP Act grants immunity to covered persons for recommended activities
         related to covered countermeasures. ...........................................................6

         1.  Covered Persons....................................................................................6

         2.  Recommended Activities .......................................................................7

         3.  Covered Countermeasure .......................................................................7

IV.  ARGUMENT .........................................................................................................9

     A.  Flocked swabs produced at Puritan's P3 factory are immune from liability. .................9

     B.  Copan cannot make a showing of willful misconduct to trigger the "sole
         exception to the immunity from suit and liability" in the PREP Act................................11

     C.  The PREP Act's immunity provisions preempt any state law causes of action............11

V.   CONCLUSION ....................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................4

*Chamber of Commerce of the U.S. v. Whiting*,
  563 U.S. 582 (2011)...........................................................................................12

*Coleman Williams, Ltd. v. Wis. Dep't of Workforce Dev.*,
  401 F. Supp. 2d 938 (E.D. Wis. 2005)................................................................5

*Garcia v. Welltower OpCo Grp. LLC*,
  522 F. Supp. 3d 734 (C.D. Cal. 2021) ................................................................1

*Gent v. CUNA Mut. Ins. Soc'y*,
  611 F.3d 79 (1st Cir. 2010).................................................................................5

*Hunter v. Bryant*,
  502 U.S. 224 (1991).............................................................................................2

*Kader v. Sarepta Therapeutics, Inc.*,
  No. 14-cv-14318-ADB, 2016 WL 1337256 (D. Mass. Apr. 5, 2016) ................5

*Laccinole v. Appriss, Inc.*,
  453 F. Supp. 3d 499 (D.R.I. 2020)......................................................................5

*Lopes v. Riendeau*,
  177 F. Supp. 3d 634 (D. Mass. 2016) .................................................................5

*Lussier v. Runyon*,
  50 F.3d 1103 (1st Cir. 1995)...............................................................................5

*Rogan v. Menino*,
  175 F.3d 75 (1st Cir. 1999).................................................................................4

*Ruiz v. Bally Total Fitness Holding Corp.*,
  496 F.3d 1 (1st Cir. 2007)...................................................................................4

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983).............................................................................................11

*Wilbur v. Locke*,
  423 F.3d 1101 (9th Cir. 2005) ............................................................................5

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
    827 F.3d 201 (1st Cir. 2016) ...........................................................................5

**Statutes**

42 U.S.C. § 247d-6d ............................................................................ *passim*

50 U.S.C. § 4512 ...........................................................................................1, 3

21 U.S.C. §§ 301, *et seq.* .............................................................................8

42 U.S.C. § 247d-6d ............................................................................ *passim*

42 U.S.C. §§ 201, *et seq.* .............................................................................6

**Other Authorities**

48 C.F.R. § 252.217-7027 (2012) ...............................................................10

85 Fed. Reg. 15,198-01, 15201 (Mar. 17, 2020) .............................1, 2, 7, 11

85 Fed. Reg. 79,194 (Dec. 9, 2020) .............................................................2

Fed. R. Civ. P. 8 ...........................................................................................4

Fed. R. Civ. P. 12 .....................................................................................1, 2. 4

Fed. R. Evid. 201 ........................................................................................5

Pursuant to Fed. R. Civ. P. 12(b)(6), Puritan moves to dismiss all counts in the First Amended Complaint (ECF No. 84) regarding flocked swabs made at Puritan's new "P3" factory in Pittsfield, Maine because of immunity under the PREP Act.[1]

## I.      INTRODUCTION

Copan's claims in this case that are directed to products from Puritan's new P3 factory are barred as a matter of law by the immunity provided to Puritan under the Public Readiness and Emergency Preparedness Act ("PREP Act") and accompanying PREP Act Declaration. *See* 42 U.S.C. §§ 247d-6d, 247d-6e (2006). The law and accompanying PREP Act Declaration immunize entities, like Puritan, providing "countermeasures" for the COVID-19 pandemic:

> [A] covered person shall be immune from suit and liability under federal and state law with respect ***to all claims for loss*** caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure.

42 U.S.C. § 247d-6d(a)(1) (emphasis added); *see* PREP Act Declaration, 85 Fed. Reg. 15198.

On July 29, 2020, during the early days of the pandemic, the U.S. government, pursuant to the industrial base expansion authorities of Title III of the Defense Production Act, engaged Puritan to increase its production of flocked swabs, which are accused of patent infringement in this case. To meet the U.S. government's critical need for expanded domestic production of flocked swabs for COVID-19 testing, Puritan built a new factory (called "P3") to manufacture flocked swabs.

Puritan built the P3 factory pursuant to a U.S. government contract expressly recognizing that Puritan's flocked swabs are subject to PREP Act immunity. Flocked swabs are a protected countermeasure, and the manufacture, distribution, and sale of P3-made flocked swabs are

---

[1] Courts have found that PREP Act immunity is properly raised in a Rule 12(b)(6) motion. *See, e.g.*, *Garcia v. Welltower OpCo Grp. LLC*, 522 F. Supp. 3d 734, 737 (C.D. Cal. 2021). If, however, the Court determines that a Rule 12(b)(6) motion is improper in this context, Puritan respectfully requests leave to file the attached First Amended Answer, which asserts PREP Act immunity as a new affirmative defense. *See* Ex. D. There is ample good cause to amend the answer because the PREP Act immunity defense was unavailable before the COVID-19 pandemic, the defense is critical to Puritan's case, there is no prejudice in adding the defense, and Puritan could not have added the defense before this.

therefore protected activities under the PREP Act. The PREP Act preempts all causes of action against covered entities, with the sole exception to immunity being a federal cause of action for death or serious physical injury proximately caused by willful misconduct of the defendant.

The challenges and tragedies presented by COVID-19 have reinforced the critical need for legal immunities so that entities like Puritan are not subject to lawsuits that will hinder and discourage their critical and ongoing work to mitigate the spread of COVID-19. The U.S. Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions *at the earliest possible stage* in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (emphasis added). This is especially so where, in cases like this, "the PREP Act exists, in part, to remove legal uncertainty and risk."[2] Delaying resolution of this issue will force Puritan to face expensive, disruptive, and protracted discovery into P3 in the middle of an unprecedented pandemic, diverting resources, and depriving Puritan of the PREP Act's clear protections.

Defendants respectfully request that the Court determine that Defendants' manufacturing, distribution, and sale of flocked swabs produced at the P3 factory are immune from liability under the PREP Act as a matter of law, and dismiss all counts in Copan's Complaint as they relate to any such activities, for failure to state a claim pursuant to Federal Rule 12(b)(6).

## II.   FACTUAL BACKGROUND

On March 10, 2020, shortly before this case was stayed, the Secretary of the U.S. Department of Health and Human Services ("Secretary") issued a declaration under the PREP Act for the COVID-19 pandemic ("Declaration"). *See* 85 Fed. Reg. 15,198-01 (Mar. 17, 2020) (Ex. A). The Secretary invoked the PREP Act's immunity provision to cover "the full range of qualified countermeasures" possible under

---

[2] HHS, Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration Under the Act (Oct. 22, 2020, as modified Oct. 23, 2020) at 1, available at www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/AO%204.2_Updated_FINAL_SIGNED_10.23.20.pdf.

the statutory text. *See id.* at 15,201 (invoking "[l]iability immunity as prescribed in the PREP Act").[3] Liability immunity expires on October 1, 2024 (after Copan's asserted patents have expired). *See id.* at 15,201. To further encourage production of countermeasures, the U.S. government also invoked the Defense Production Act ("DPA") to increase the supply of countermeasures (e.g., swabs and masks).

Puritan answered the call when the U.S. government asked for a dramatic increase in domestic manufacturing of foam and flocked swabs. First, Puritan built the P2 factory to make foam swabs. Next, Puritan built the P3 factory to make flocked swabs. Puritan did this, despite the lawsuit filed by Copan, because it was the right thing to do, and also because the U.S. government agreed that the immunity provisions of the PREP Act applied to, and protected, Puritan.

Puritan was awarded a government contract in July 2020 to expand its production capacity for flocked swabs. *See* Ex. B (Contract No. FA8730-20-C-0056).[4] The purpose of this contract was to "expand the domestic production of flock tipped swabs required by medical professionals for COVID-19 testing." *Id.* at 66. The contract further recognized a need to "expand the domestic production of flock tipped swab resources needed to respond to the spread of COVID-19, as well as ensure sufficient domestic capacity and supply for future pandemics." *Id.* Puritan was obligated to achieve a production capacity of at least 45 million flocked swabs per month (*see id.* at 68), and the government funding would be used to allow Puritan to procure new facilities to meet this goal:

> Currently, the Contractor has the capability and capacity to produce 5 [m]illion flock tip swabs per month. In order to meet domestic demand of 50 million flock tip swabs per month, the Contractor will have to install and run an additional 20 Ultra Flock Tipping machines and 6 Automated Packaging machines. ***The Contractor intends to procure a new facility and a subset of these machines (i.e., 5 Ultra machines) via capital investment. This effort will fund required upgrades of the facility and the balance of the machines***.

---

[3] The Secretary subsequently ordered that the "Declaration must be construed in accordance with the Advisory Opinions" of the Health and Human Services (HHS) agency. 85 Fed. Reg. 79,194 (Dec. 9, 2020); *see also supra* at n.2.

[4] *See also* "Remarks at Puritan Medical Products Company Headquarters in Guilford, Maine June 5, 2020," available at   www.govinfo.gov/content/pkg/DCPD-202000430/pdf/DCPD-202000430.pdf   (the construction of Puritan's Pittsfield facility is noted on page 4).

*Id*. at 66 (emphasis added).

This undefinitized government contract was supplemented with additional terms. *See* Ex. C. One supplement expressly clarified the following: (1) the contract was entered into for the purposes of producing "covered countermeasures" under the PREP Act; (2) Puritan (as the contractor) is a "covered person" under the PREP Act; and (3) the U.S. government recognized that Puritan was entitled to the immunity provisions set forth in the PREP Act with respect to Puritan's performance under the contract:

> In accordance with the . . . "PREP Act" . . . , as well as the Secretary of HHS's . . . "PREP Act Declaration" . . . (i) this Agreement is being entered into for purposes of production capability expansion for "Covered Countermeasures" for responding to the COVID-19 public health emergency, in accordance with Section VI of the PREP Act Declaration; (ii) Contractor's performance of this Agreement falls within the scope of the "Recommended Activities" for responding to the COVID-19 public health emergency; and (iii) Contractor is a "Covered Person" to the extent it is a person defined in Section V of the PREP Act Declaration. Therefore, in accordance with . . . the PREP Act Declaration as well as the PREP Act . . . , ***the Air Force expressly acknowledges and agrees that Contractor shall be immune from suit and liability*** to the extent and as long as Contractor's activities fall within the terms and conditions of the PREP Act and the PREP Act Declaration.

*Id*. at 7 (emphasis added).

As shown above, Puritan built a new facility to meet its obligations under the contract. This new facility (P3) is in Pittsfield, Maine, and became operational in 2021. P3 has been used to manufacture flocked swabs in accordance with the above-identified government contract since that time.

## III.   LEGAL STANDARDS

### A.   Dismissal Under Rule 12(b)(6)

Federal Rule 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007); Fed. R. Civ. P. 8(a)(2). On a motion to dismiss under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175

4

F.3d 75, 77 (1st Cir. 1999)). However, a complaint should be dismissed if the plaintiff has failed "to state a claim to relief that is plausible on its face." *Bell*, 550 U.S. at 570.

### B. Judicial Notice

At the motion to dismiss stage, "a court may consider matters of public record and facts susceptible to judicial notice." *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016). In particular, courts may take notice of and consider any facts that are "not subject to reasonable dispute" because that fact "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 666 (D. Mass. 2016) (citation and quotations omitted). "A high degree of indisputability is the essential prerequisite" to taking judicial notice of any fact. Fed. R. Evid. 201, advisory committee notes.

The First Circuit has recognized that "government documents are subject to judicial notice," where "information contained therein is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Lussier v. Runyon*, 50 F.3d 1103, 1114 (1st Cir. 1995) (quotations omitted). Applying this logic, statements on U.S. state and federal government websites are normally found to be eligible for judicial notice. *See Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n. 5 (1st Cir. 2010) (taking "judicial notice of the relevant facts provided on the [Center for Disease Control's] website, which are 'not subject to reasonable dispute'"); *Kader v. Sarepta Therapeutics, Inc.*, No. 14-cv-14318-ADB, 2016 WL 1337256, at *11 (D. Mass. Apr. 5, 2016) (taking judicial notice of statements published on a government website); *Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 503 (D.R.I. 2020) (same).

Courts have also recognized that U.S. state and federal contracts are a matter of public record and subject to judicial notice. *See Coleman Williams, Ltd. v. Wis. Dep't of Workforce Dev.*, 401 F. Supp. 2d 938, 940 n.1 (E.D. Wis. 2005) (recognizing government contract as public record to which a court may take judicial notice); *Wilbur v. Locke*, 423 F.3d 1101, 1112 (9th Cir. 2005) (taking judicial notice of a state contract as a matter of public record).

C.     **The PREP Act grants immunity to covered persons for recommended activities related to covered countermeasures.**

The PREP Act was enacted on December 30, 2005 as part of the Public Service Health Act (42 U.S.C. §§ 201, *et seq.*). It allows the Secretary to declare a public health emergency, and take appropriate action to lead the national response. *See* 42 U.S.C. § 247d-6d. The PREP Act further authorizes the Secretary to provide civil immunity to individuals and companies participating in the national emergency response. *See id.* Once the Secretary issues a declaration, the PREP Act provides a "covered persons" immunity:

> from suit and liability under Federal and State law with respect ***to all claims for loss*** arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure.

42 U.S.C. § 247d-6d(a)(1) (emphasis added); *see also* 42 U.S.C. § 247(d)(a)(2)(A) (defining "loss" broadly as "any type of loss").

To encourage participation, the PREP Act provides civil immunity to individuals and companies participating in the country's emergency response. *See* 42 U.S.C. § 247d-6d(b)(1). Specifically, following a declaration, the PREP Act provides "covered persons" involved in the manufacture, distribution, or sale of qualified pandemic or epidemic products, with broad immunity: "a covered person ***shall be immune from suit and liability under Federal and State law*** with respect to ***all claims for loss*** arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1) (emphases added).

1.     **Covered Persons**

A "covered person" is:

> (B) ***a person or entity that is--***
>      (i) ***a manufacturer of such countermeasure***;
>      (ii) ***a distributor of such countermeasure***; . . . .

42 U.S.C. § 247d-6d (i)(2) (emphases added).

6

The term "manufacturer" includes:

(B) *a supplier or licenser of any product, intellectual property, service, research tool, or component* or other article used in the design, development, clinical testing, investigation, or manufacturing *of a covered countermeasure*; and

(C) *any or all of the parents, subsidiaries, affiliates,* successors, and assigns of a manufacturer.

42 U.S.C. § 247d-6d (i)(4) (emphases added).

The PREP Act defines a "distributor" as:

*a person or entity engaged in the distribution* of drugs, biologics, or *devices, including but not limited to manufacturers*; repackers; common carriers; contract carriers; air carriers; own-label distributors; private-label distributors; jobbers; brokers; warehouses, and wholesale drug warehouses; independent wholesale drug traders; and retail pharmacies.

42 U.S.C. § 247d-6d (i)(3) (emphases added).

## 2.   Recommended Activities

The PREP Act immunity broadly applies to:

*any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure*, including a causal relationship with the design, development, clinical testing or investigation, *manufacture*, labeling, **distribution**, formulation, *packaging, marketing, promotion, sale*, purchase, donation, dispensing, prescribing, administration, licensing, *or use of such countermeasure*.

42 U.S.C. § 247d-6d (a)(2)(B) (emphases added); *see also* 42 U.S.C. § 247(d)(a)(2)(A) (defining "loss" broadly as "*any* type of loss, including" death, personal injury, and others (emphasis added)). Immunity under the PREP Act requires a declaration by the Secretary, describing recommended activities to take in response to the public health emergency to which the immunity will apply. In the COVID-19 declaration, the Secretary of HHS identified the following Recommended Activities: "the manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures." 85 Fed. Reg. 15198, 15201 (March 17, 2020).

## 3.   Covered Countermeasure

The PREP Act defines a "covered countermeasure" as:

7

      (A)      ***a qualified pandemic or epidemic product*** . . . .;

      (B)      a security countermeasure . . . .;

      (C)      a drug . . . , biological product . . . , or device . . . that is authorized for emergency use . . . ; or

      (D)      a respiratory protective device . . . , and that the Secretary determines to be a priority for use during a public health emergency . . . .

42 U.S.C. § 247d-6d(i)(1).

The PREP Act defines a "qualified pandemic or epidemic product" as:

a drug . . . , biological product . . . , or device (as such term is defined by section 201(h) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321(h)) that is –

(A)

      (i)      a product manufactured, used, designed, developed, modified, licensed, or procured-
           (I) ***to diagnose***, mitigate, prevent, treat, or cure ***a pandemic or epidemic***; or
           (II) to limit the harm such pandemic or epidemic might otherwise cause.

      (ii)      a product manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a product described in clause (i); . . .

(B)

      (i)      approved or cleared . . . or licensed . . . ;

      (ii)      the object of research for possible use . . . ; or

      (iii)      ***authorized for emergency use*** . . . .

42 U.S.C. § 247d-6d (i)(7) (emphasis added).

There is one exception to the immunity provisions:

[T]he sole exception to the immunity from suit and liability of covered persons . . . shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct, as defined pursuant to subsection (c), by such covered person. For purposes of section 2679(b)(2)(B) of Title 28, such a cause of action is not an action brought for violation of a statute of the United States under which an action against an individual is otherwise authorized.

42 U.S.C. § 247d-6d(d)(1).

8

## IV.     ARGUMENT

### A.     Flocked swabs produced at Puritan's P3 factory are immune from liability.

The PREP Act provides immunity to entities providing countermeasures to COVID-19 during the declared public health emergency. *See* 42 U.S.C. §§ 247d 6d, 247d-6e (2006). In this case, the Secretary declared an emergency on March 10, 2020, and stated that PREP Act immunity was retroactive to February 4, 2020 and would extend until at least October 1, 2024. *See* Ex. A at 15198.

During this period of time, "covered persons" who participate in the manufacturing, distribution, or sale of covered countermeasures "*shall be immune from suit and liability under Federal and State law* with respect to *all claims for loss* arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1) (emphases added).

#### 1.     There can be no reasonable doubt that Puritan is a covered person.

Puritan manufactures and distributes flocked swabs and, as such is a "covered person." 42 U.S.C. § 247d-6d (a covered person is: "a person or entity that is—(i) a manufacturer of such countermeasure; (ii) a distributor of such countermeasure"); *see also* 42 U.S.C. § 247d-6d(i)(2). Puritan's status as a covered person is underscored by the express terms of its contract with the Air Force to establish P3: "Contractor is a 'Covered Person' to the extent it is a person defined in Section V of the PREP Act Declaration." Ex. C at 7.[5]

#### 2.     Flocked swabs are "covered countermeasures."

Puritan's flocked swabs are indisputably covered countermeasures. Critical to Puritan's acceptance of the U.S. Government's industrial base expansion project was an express agreement by the Government, acting through the Air Force, that the flocked swabs to be produced at the P3 facility constitute covered countermeasures. To expedite the commencement of the flocked swab industrial base expansion project, the parties entered into an undefinitized contract. By law, the undefinitized contract

---

[5] Section V of the PREP Act Declaration defines a "Covered Person" as including: "among others, the United States, and those that manufacturer, distribute, administer, prescribe or use Covered Countermeasures." Ex. A at 15,199.

allowed monies to begin flowing while the parties worked to definitize the contract. Ex. B at 29; 48 C.F.R. ("DFARS") § 252.217-7027. The definitized contract, which constitutes the parties' final agreement, includes one substantive addition: the express statement of the Air Force affirming that the flocked swabs are covered countermeasures:

> In accordance with the Public Readiness and Emergency Preparedness Act ("PREP Act") . . . as well as the Secretary of HHS's Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 (the "PREP Act Declaration") . . . (i) *this Agreement is being entered into for purposes of production capability expansion or "Covered Countermeasures" for responding to the COVID-19 public health emergency, in accordance with Section VI of the PREP Act Declaration;* (ii) Contractor's performance of this Agreement falls within the scope of the "Recommended Activities" for responding to the COVID-19 public health emergency; and (iii) Contractor is a "Covered Person" to the extent it is a person defined in Section V of the PREP Act Declaration.

Ex. C at 6–7 (emphasis added).

The legal basis of the Air Force's statement is unassailable. Flocked swabs are "manufactured, used, designed, developed, modified, licensed, or procured . . . to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic" (i.e., COVID-19), and therefore constitute a "qualified pandemic or epidemic product" and a "covered countermeasure." 42 U.S.C. § 247d-6d (i)(7)(A). And swabs (including flocked swabs) are of course key and necessary elements in the collection of sample in COVID-19 diagnostic kits that have been granted Emergency Use Authorization ("EUA") by the FDA. *See, e.g.*, www.fda.gov/media/140290/download (EUA for diagnostic kit with nasal swab). As such, they clearly constitute a "covered countermeasure" under 42 U.S.C. § 247d-6d(i)(7)(B).

### 3.   Puritan engaged in recommended activities.

As noted above, the PREP Act provides that:

> a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, *arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure* if a declaration under subsection (b) has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)(1). Under the PREP Act declaration, the Secretary expressly described the recommended activities that would be subject to PREP Act immunity:

10

III. Recommended Activities
42 U.S.C. 247d-6d(b)(1)

I recommend, under the conditions stated in this Declaration, the manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures.

85 Fed. Reg. 15198, 15201. There is no doubt that Puritan engaged in Recommended Activities—a point that the Air Force acknowledged: "Contractor's performance of this Agreement falls within the scope of the 'Recommended Activities' for responding to the COVID-19 public health emergency." Ex. C at 7.

Puritan's P3 factory was built pursuant to a government contract to "expand the domestic production of flock tipped swabs required by medical professionals for COVID-19 testing." Ex. B at 66. Thus, all swabs produced at this facility, since it became operational, are qualified pandemic products and hence covered countermeasures. And even if all of the allegations in Copan's Complaint are presumed to be true (which they must for purpose of this motion), Puritan *still* cannot be found liable for infringement of Copan's patents, or for any of the other federal or state law causes of action asserted in the Complaint. Indeed, the term of the declared emergency extends until October 1, 2024, beyond the expiration date of all of the asserted patents.

**B.    Copan cannot make a showing of willful misconduct to trigger the "sole exception to the immunity from suit and liability" in the PREP Act.**

The PREP Act includes a single exception allowing a plaintiff to obtain relief concerning conduct that would otherwise be immune: "the sole exception to the immunity from suit and liability of covered persons set forth in subsection (a) shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct, as defined pursuant to subsection (c), by such covered person." 42 U.S.C. § 247d-6d(d)(1). Here, Copan's Complaint asserts no claim related to "death or serious physical injury," and so this exception does not apply.

**C.    The PREP Act's immunity provisions preempt any state law causes of action.**

Copan's state law causes of action are preempted. In determining whether a federal law preempts a state law cause of action, the determinative inquiry is "Congress' intent in enacting the federal statute

11

at issue." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95 (1983). When a federal statute has an express preemption clause, the focus is on the plain wording of the clause, "which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Commerce of the U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (citation omitted).

The PREP Act shows clear Congressional intent to preempt state law: "a covered person shall be immune from suit and liability under Federal ***and State law*** with respect to ***all claims for loss*** caused by, arising out of, relating to, or resulting from the administration to or the use by and individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1) (emphases added). The PREP Act further provides that "[t]he immunity . . . applies to ***any claim for loss*** that has a causal relationship with the administration to or use by and individual of a covered countermeasures." 42 U.S.C. § 247d-6d(a)(2)(B) (emphasis added). The preemption of conflicting state law in this area is further clarified by the following provision:.

> No State . . . may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that . . . (A) is different from, or is in conflict with, any requirement applicable under this section; and (B) relates to the . . . use, . . . dispensing, or administration by qualified persons of the covered countermeasure.

42 U.S.C. § 247d-6d(b)(8).

Therefore, any state law claims that Copan asserts against the activities in Puritan's P3 factory or the swabs made there are preempted.

## V.    CONCLUSION

For these reasons, the Court should enforce the PREP Act's immunity for all activities concerning Puritan's P3 factory.

Dated: October 15, 2021                    Respectfully submitted,

*/s/ Stacy O. Stitham*
Peter J. Brann
Stacy O. Stitham
David Swetnam-Burland
BRANN & ISAACSON
184 Main Street, 4th Floor
Lewiston, ME 04243-3070
(207) 786-3566
pbrann@brannlaw.com
sstitham@brannlaw.com
dsb@brannlaw.com

Of Counsel:

James H. Hulme
Janine A. Carlan
Taniel E. Anderson
Kevin R. Pinkney
Gary A. Coad
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006
(202) 857-6000
james.hulme@arentfox.com
taniel.anderson@arentfox.com
janine.carlan@arentfox.com
kevin.pinkney@arentfox.com
gary.coad@arentfox.com

Andrew R. Levin
ARENT FOX LLP
The Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199
(617) 973-6100
andrew.levin@arentfox.com

*Attorneys for Defendants*