UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| COPAN ITALIA S.P.A., and COPAN DIAGNOSTICS, INC., | ) ) ) |
| Plaintiffs, | ) )   Civil Action No. 1:18-cv-00218-JDL |
| v. | ) ) |
| PURITAN MEDICAL PRODUCTS COMPANY LLC, PURITAN DIAGNOSTICS LLC, HARDWOOD PRODUCTS COMPANY LP and HARDWOOD PRODUCTS COMPANY, LLC | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS COPAN ITALIA S.P.A. AND COPAN DIAGNOSTICS, INC.'S OPPOSITION TO DEFENDANTS'[1] PARTIAL MOTION TO DISMISS**

---

[1] Puritan titled its motion as "Defendants' Partial Motion To Dismiss" (ECF No. 212) and in its memorandum of law makes reference only to "Puritan."  Copan in its opposition refers collectively to all defendants Puritan Medical Products Company LLC, Puritan Diagnostics LLC, Hardwood Products Company LP and Hardwood Products Company LLL as "Puritan."

## TABLE OF CONTENTS

I.      **INTRODUCTION**...................................................................................................1

II.    **LEGAL STANDARDS** ..........................................................................................2

     A.    Motion to Dismiss ........................................................................................2

     B.    The PREP Act ...............................................................................................2

III.   **FACTUAL BACKGROUND** ..................................................................................4

IV.   **ARGUMENT** .........................................................................................................5

     A.    Under Puritan's Incorrect Interpretation, the PREP Act is Either Unconstitutional or Automatically Invokes the Government's Power of Eminent Doman under 28 U.S.C. § 1498(a) ...........................................................................................................6

     B.    The PREP Act Does Not Shield Puritan from Copan's Claims ...............................10

          1.    The PREP Act provides immunity only where there has been physical harm, and should not be read to provide immunity from Copan's claims, all of which are all purely economic in nature ...............................................................................11

          2.    Immunity under the PREP Act applies only to claims for loss caused by the "administration to or use by an individual" of a covered countermeasure .........14

          3.    Copan asserts claims that are not caused by "administration to or use by an individual" of a covered countermeasure ............................................................16

     C.    Puritan's Motion Fails on Procedural Grounds ........................................................17

V.    **CONCLUSION** ...................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acoustic Processing Tech., Inc. v. KDH Electronic Sys., Inc.*,
  724 F. Supp. 2d 128 (D. Me. 2010) ...............................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................2

*Brown v. Duchesne*,
  60 U.S. 183 (1856).........................................................................................7

*Casabianca v. Mount Sinai Med. Ctr., Inc.*,
  No. 112790/10, 2014 N.Y. Misc. LEXIS 5998 (N.Y. Sup. Ct. Dec. 2, 2014)
  ...................................................................................................10, 11, 13, 15

*Consolidated Fruit-Jar Co. v. Wright*,
  94 U.S. 92 (1876)....................................................................................... 7-8

*Crater Corp. v. Lucent Techs. Inc.*,
  255 F.3d 1361 (Fed. Cir. 2001).....................................................................9

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*,
  918 N.E.2d 36 (Mass. 2009) .......................................................................14

*Defenshield, Inc. v. First Choice Armor & Equip., Inc.*,
  No. 5:10-CV-1140, 2012 WL 1069088 (N.D.N.Y. Mar. 29, 2012) .......................................17

*Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*,
  527 U.S. 627 (1999).......................................................................................7

*Harry's Cadillac-Pontiac-GMC Truck Co., Inc. v. Motors Ins. Corp.*,
  486 S.E.2d 249 (N.C. Ct. App. 1997) .........................................................12

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
  909 F.2d 1464 (Fed. Cir. 1990).............................................................. 16-17

*Horne v. Dep't of Agric.*,
  576 U.S. 350 (2015).......................................................................................8

*Howard Stores Corp. v. Foremost Ins. Co.*,
  441 N.Y.S.2d 674 (N.Y. App. Div. 1981) ...................................................12

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)......................................................................2

*James v. Campbell*,
    104 U.S. 356 (1881) ................................................................................8

*Jones & Jones v. Pineda & Pineda*,
    22 F.3d 391 (1st Cir. 1994) ...................................................................9

*Khalek v. S. Denver Rehab., LLC*,
    No. 1:20-cv-02240, 2021 U.S. Dist. LEXIS 113165 (D. Colo. June 11, 2021) ....................13

*Linear Tech. Corp v. Impala Linear Corp.*,
    No. 98-1727, 2001 WL 36126932 (N.D. Cal. Sept. 21, 2001) ................................17

*Lopez v. Life Care Ctrs. of Am., Inc.*,
    No. 20-0958, 2021 U.S. Dist. LEXIS 56102 (D.N.M. Mar. 24, 2021) ....................12

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007) .............................................................2

*Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.*,
    No. 20-cv-01470, 2021 U.S. Dist. LEXIS 179812 (D. Colo. Sept. 17, 2021) ...............12

*Oceanside at Pine Point Condominium Owners Ass'n v. Peachtree Doors, Inc.*,
    659 A.2d 267 (Me. 1995) ......................................................................13

*Oil States Energy Servs., LLC, v. Greene's Energy Grp.*,
    138 S. Ct. 1365 (2018) ........................................................................8

*R.L. Whipple Co., Inc. v. Pondview Excavation Corp.*,
    887 N.E.2d 1095 (Mass. App. Ct. 2008) .................................................14

*Return Mail, Inc. v. United States Postal Serv.*,
    868 F.3d 1350 (Fed. Cir. 2017) .............................................................8

*Ruiz v. Bally Total Fitness Holding Corp.*,
    496 F.3d 1 (1st Cir. 2007) ...................................................................2

*Sperry Gyroscope Co. v. Arma Eng'g Co.*,
    271 U.S. 232 (1926) ........................................................................9, 10

*Szulik v. State St. Bank & Tr. Co.*,
    935 F. Supp. 2d 240 (D. Mass. 2013) ....................................................14

*Toxgon Corp. v. BNFL, Inc.*,
    312 F.3d 1379 (Fed. Cir. 2002) .............................................................9

*Trojan, Inc. v. Shat-R-Shield, Inc.*,
    885 F.2d 854 (Fed. Cir. 1989) .............................................................9

*Williams v. Columbia Broad. Sys., Inc.*,
57 F. Supp. 2d 961 (C.D. Cal. 1999) ............................................................. 9-10

*Wyman v. Ayer Properties, LLC*,
11 N.E. 3d 1074 (Mass. 2014) ..................................................................... 13-14

*Zoltek Corp. v. United States*,
442 F.3d 1345 (Fed. Cir. 2006).........................................................................8

**Statutes**

28 U.S.C. § 1498...............................................................................8, 9, 10

28 U.S.C. § 1498(a) ................................................................................ *passim*

35 U.S.C. § 261 ...........................................................................................7

42 U.S.C. § 247d-6d ................................................................................ *passim*

**Other Authorities**

42 C.F.R. § 110.20(c) (2020) ...........................................................................3

42 C.F.R. § 110.100 (2020) .............................................................................3

85 Fed. Reg. 15,198-202 (Mar. 17, 2020) ................................................3, 12, 14, 15

86 Fed. Reg. 51,160 (Sept. 14, 2021) .............................................................3, 4

Fed. R. Civ. P. 12, *et seq.*................................................................................2, 9

Fed. R. Civ. P. 56 ........................................................................................9

HHS OGC Advisory Opinion 20-04 (Oct. 23, 2020) ................................................11

Kevin J. Hickey, *The PREP Act and COVID-19: Limiting Liability for Medical Countermeasures*, Cong. Rsch. Serv., LSB10443 (2021) ............................................11

Steven Plitt et al., *Couch on Insurance* § 167:15 (3d ed. updated 2021)......................12

I.      **INTRODUCTION**

The PREP Act does not allow Puritan to infringe Copan's patents without recourse. The PREP Act was not designed to insulate accused infringers from paying royalties or other money damages, but rather to ensure that during a time of crisis when patients were given a covered countermeasure, they could not then hold a covered person liable for personal injuries or losses suffered in connection with the administration or use of that countermeasure. Puritan's claims of immunity are completely divorced from that core requirement of the PREP Act. Copan is not a medical patient who has been injured by the administration or use of a Puritan flocked swab. Copan invented the flocked swab and Puritan copied it. By copying Copan's invention, Puritan has enjoyed an unprecedented windfall based exclusively on taking Copan's patented property for itself, and that is something that the PREP Act does not immunize.

Rather than paying Copan what it owes, Puritan now takes the incredible position that the PREP Act should be read as completely extinguishing Copan's patent rights. Puritan's reading of the PREP Act cannot be correct. The government cannot take away Copan's patent rights without due process under the Fifth Amendment. So, even if the PREP Act was meant to allow patent infringement, which it is not, Puritan's only recourse was to plead an affirmative defense under 28 U.S.C. § 1498(a). This would have allowed Copan to proceed with a claim against the government in the Court of Federal Claims. Rather than properly pleading the Section 1498(a) defense, Puritan tries to fit a round peg into a square hole by suggesting that the PREP Act, which has nothing to do with patent infringement, somehow frees Puritan from Copan's claims. No court has ever adopted this extraordinary interpretation of the PREP Act, and this Court should decline to do so here.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the counts in the complaint must be supported by "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because "[a] motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law," the law of the regional circuit applies. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007); *accord In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). On a motion to dismiss under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).

### B.   The PREP Act

Passed in 2005, the Public Readiness and Emergency Preparedness Act ("PREP Act") authorizes the Secretary of Health and Human Services ("HHS") to issue a declaration determining that a "disease or other health condition or other threat to health constitutes a public health emergency." 42 U.S.C. § 247d-6d(b). Where applicable, the PREP Act precludes certain causes of action based on personal injuries that result in the course of treating individual patients. That is, the PREP Act provides immunity from liability for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). The PREP Act sets forth a non-exhaustive list of losses for which immunity can apply. The list includes "(i) death; (ii) physical, mental, or emotional injury, illness, disability, or condition; (iii) fear of physical, mental, or emotional

injury, illness, disability, or condition, including any need for medical monitoring; and (iv) loss

of or damage to property, including business interruption loss." 42 U.S.C. § 247d-6d(a)(2)(A).

If immunity under the PREP Act applies, the injured person or their survivors may only

seek compensation from the Countermeasures Injury Compensation Program (CICP)—a

regulatory program that provides reimbursement for certain losses associated with the use of

covered countermeasures that result in a serious injury. *See* 42 U.S.C. § 247d-6e. If a particular

injury is not listed in the CICP's countermeasures injury table, "the requester must demonstrate

that the injury occurred as the direct result of the administration or use of a covered

countermeasure. Such proof must be based on compelling, reliable, valid, **medical** and scientific

evidence." 42 C.F.R. § 110.20(c) (2020) (emphasis added). All of the listings in the CICP's

countermeasures injury table are personal injuries related to physical harms resulting from the

administration or use of e.g., vaccines, drugs, or ventilators.[2] Patent infringement is not identified

as a "loss" by the PREP Act, nor is it listed as an injury in the CICP's countermeasures injury

table. For good reason.

The PREP Act was invoked in March 2020 in response to the current pandemic when the

HHS Secretary issued a Declaration Under the Public Readiness and Emergency Preparedness

Act for Medical Countermeasures Against COVID-19 ("March 17, 2020 Declaration"), which

declared the pandemic to be a public health emergency under the PREP Act. 85 Fed. Reg. 15198,

15201 (Mar. 17, 2020). The Secretary has since amended the declaration nine times. *See* Ninth

Amendment to Declaration Under the PREP Act for Medical Countermeasures Against COVID-

---

[2] The Covered Countermeasures Injury Tables list the following injuries: anaphylaxis, deltoid bursitis, vasovagal syncope, Guillain-Barré Syndrome, postintubation tracheal stenosis, ventilator-associated pneumonia and tracheobronchitis, ventilator-induced lung injury, bleeding events, significant local skin reaction, Stevens-Johnson Syndrome/toxic epidermal necrolysis, inadvertent autoinoculation, generalized *vaccinia*, eczema *vaccinatum*, progressive *vaccinia*, post-*vaccinial* encephalopathy, encephalitis or encephalomyelitis (PVEM), *vaccinial* myocarditis, pericarditis, or myopericarditis (MP), transfusion-related acute lung injury (TRALI), acute renal failure (ARF), drug-induced aseptic meningitis (DIAM), and hemolysis. 42 C.F.R. § 110.100.

19, 86 Fed. Reg. 51,160-02 (Sept. 14, 2021). HHS has also issued advisory opinions and guidance letters on various issues related to the declaration. None of those opinions or letters contemplate the PREP Act as a license to take other people's property, or infringe and manufacture mass quantities of countermeasures covered by another person's patent. Instead, the opinions and letters all contemplate the PREP Act as a shield from lawsuits related to negligence resulting in physical injury caused by the administration to or use by an individual of a covered countermeasure.

## III.   FACTUAL BACKGROUND

Puritan alleges that "Puritan was awarded a government contract in July 2020 to expand its production capacity for flocked swabs." Mot. at 3 (citing Ex. B. (Contract No. FA8730-20-C-0056)). Puritan alleges that the contract "affirm[s] that the flocked swabs are covered countermeasures [under the PREP Act]." *Id.* at 10. The contract Puritan relies upon does not suggest that the government intended to allow the covered countermeasures to infringe Copan's patent rights. On the contrary, the contract includes an express unlimited indemnification clause requiring Puritan to indemnify the government for any claims of patent infringement. Specifically, the contract states:

> (h) Patent indemnity. The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

Mot. Ex. B (Doc. No. 212-2) at 16.

While the government was aware of the PREP Act, it did not consider the PREP Act to extend immunity to Puritan from this lawsuit. The government did not interpret the PREP Act as

leaving Copan without any recourse while Puritan continues to willfully engage in extremely profitable sales of goods covered by Copan's patents.

## IV.   <u>ARGUMENT</u>

Puritan's expansive reading of the PREP Act is novel and unsupported. No court has ever held that the PREP Act shields private parties from patent infringement suits. It does not, and Puritan appears to be the first litigant ever to propose that it does. Puritan's interpretation of the PREP Act would completely alter the purpose and scope of the act. It would leave Copan with no recourse for Puritan's continuous and willful infringement of Copan's patented technology that has proved to be so important and beneficial to the world during these times. If Puritan's reading of the PREP Act is correct, which it is not, it would deprive Copan of its property rights without recourse, rendering the act unconstitutional under the Fifth Amendment's Due Process Clause and Takings Clause. Alternatively, Puritan's PREP Act interpretation would invoke the government's powers of eminent domain under 28 U.S.C. § 1498(a) which would at least allow Copan to seek damages directly from the government rather than rendering the act unconstitutional. Neither of these results is correct because the PREP Act should not be read so radically that it provides an invitation for Puritan to take Copan's property.

The PREP Act provides "[t]argeted liability protections" to healthcare workers and manufacturers from causes of action based on negligence or product liability during a declared pandemic. *See* 42 U.S.C. § 247d-6d (emphasis added). If Puritan enjoys any immunity at all under the PREP Act, that immunity is limited to claims arising from a flocked swab or other countermeasure that hurt or killed someone during its administration or use. That is all. Puritan still has to pay its bills and honor its contracts. Puritan cannot tell the electric company that it will no longer pay its bills just because the electricity was used to make covered countermeasures under the PREP Act. Such an economic "loss" for the electric company is not

contemplated by the PREP Act. The PREP Act's immunity does not allow Puritan to take other people's property without consequence, and it does not allow Puritan to infringe Copan's patents.

### A. Under Puritan's Incorrect Interpretation, the PREP Act is Either Unconstitutional or Automatically Invokes the Government's Power of Eminent Domain under 28 U.S.C. § 1498(a)

Puritan chose not to assert an affirmative defense under 28 U.S.C. § 1498(a). Puritan was aware of this defense, but decided not to raise it before the October 15, 2021 deadline to amend pleading. *See* Doc. No. 210 (Hr'g Tr.) at 5 ("THE COURT: . . . there appears to be some agreement on at least two of the four areas that I think are primarily to be discussed this afternoon on agreed to discovery; namely, to the extent that the government contract defense under Section 1498 (a) of Title 28 is invoked by the defendants, there can be discovery on that and also discovery on damages."); *id*. at 15 ("MR. ANDERSON: We do have problems with that as well, Your Honor. We have problems—I think the 1498 defense, it will be what it is. If we plead it, then we'll go there."). Puritan's failure to assert a Section 1498(a) defense was not by accident. It is not a mistake or a misunderstanding. Puritan knowingly waived the Section 1498(a) defense because it does not help them.

Puritan is contractually obligated to indemnify the government for any claims of patent infringement, and its failure to invoke Section 1498(a) reflects that obligation. Puritan built its P3 facility "pursuant to a U.S. government contract." Mot. at 1. Puritan disclosed that contract, which is Contract No. FA8730-20-C-0056, as part of its motion to dismiss and it has the following clause:

> (h) Patent indemnity. The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the

6

performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

Mot. at Ex. 1 (Doc. No. 212-2) at 16. It is fair to assume that Puritan was "reasonably notified of" Copan's patent infringement claims when it signed the contract, because this case was pending at that time. And it is understandable why, in light of the circumstances, the government would insist on including an indemnification clause in any contract with Puritan. The result is that Puritan must indemnify the government for any infringement related to the flocked swabs made at its P3 facility. Therefore, a defense under Section 1498(a) has no benefit to Puritan. Such a defense would only remove certain claims to the Court of Federal Claims, and buy the headache of litigating two cases in parallel and in separate jurisdictions, and with the government as an additional party.

With the indemnification clause removing any meaningful defense under Section 1498(a), Puritan turns to the PREP Act for relief, advancing the extraordinary argument that the PREP Act completely immunizes both it and the government from patent infringement claims, effectively extinguishing Copan's patent rights. This cannot be correct. Copan can find no precedent to support Puritan's position. Puritan's novel reading of the PREP Act is unnatural and would render it unconstitutional and in violation of the Fifth Amendment's Takings Clause and Due Process Clause. This is because patent rights are personal property. 35 U.S.C. § 261 ("Subject to the provisions of this title, patents shall have the attributes of personal property."). As such, the Supreme Court has repeatedly held that patents rights are subject to the Fifth Amendment. *See, e.g.*, *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 642 (1999) ("Patents, however, have long been considered a species of property. *See Brown v. Duchesne*, 60 U.S. 183, 197 (1856) ('For, by the laws of the United States, the rights of a party under a patent are his private property'); *cf.*, *Consolidated Fruit-Jar Co. v.*

*Wright*, 94 U.S. 92, 96 (1876) ('A patent for an invention is as much property as a patent for land'). As such, they are surely included within the 'property' of which no person may be deprived by a State without due process of law. …[)]"); *James v. Campbell*, 104 U.S. 356, 358 (1881) ("[L]etters-patent for a new invention or discovery in the arts [. . .] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser, we have no doubt.") (cited by *Horne v. Dep't of Agric.*, 576 U.S. 350, 359 (2015) (ruling that personal property is not any less protected against physical appropriation than real property)). Most recently, in addressing the constitutionality of *inter partes* reviews, the Supreme Court stated, that "our decision should not be misconstrued as suggesting that patents are not property for purposes of the Due Process Clause or the Takings Clause." *Oil States Energy Servs., LLC, v. Greene's Energy Grp., LLC,* 138 S. Ct. 1365, 1379 (2018).

Because of the limitations placed on the government by the Fifth Amendment, when the government infringes a patent, or authorizes and consents to having its contractors infringe a patent, it is spontaneously deemed to have exercised its power of eminent domain and "taken" a patent license for which it must compensate the patent owner under 28 U.S.C. § 1498(a). "Unlike regulatory takings and the inverse condemnation of real property, the 'taking' of a license to use a patent creates a cause of action under § 1498." *Zoltek Corp. v. United States*, 442 F.3d 1345, 1353 (Fed. Cir. 2006). "Section 1498(a) 'is an eminent domain statute,' wherein the government 'has consented thereunder only to be sued for its taking of a patent license.'" *Return Mail, Inc. v. United States Postal Serv.*, 868 F.3d 1350, 1361 (Fed. Cir. 2017) (citations omitted). Section 1498(a) is not optional. It applies "to all possible cases wherein patents may be infringed by or

on behalf of the government." *Trojan, Inc. v. Shat-R-Shield, Inc.*, 885 F.2d 854, 856-57 (Fed. Cir. 1989) (Newman, J., concurring). Therefore, if the PREP Act is read as Puritan incorrectly suggests, the act would either be unconstitutional, or automatically create a limited cause of action against the government under Section 1498(a).

If the PREP Act creates a limited cause of action against the government, Puritan needed to plead an affirmative defense under Section 1498(a), but it did not. *See Acoustic Processing Tech., Inc. v. KDH Electronic Sys., Inc.*, 724 F. Supp. 2d 128, 131 (D. Me. 2010) (the "government contractor defense is not a jurisdictional argument, but an affirmative defense [that] can be waived."); *see also Jones & Jones v. Pineda & Pineda*, 22 F.3d 391, 400 (1st Cir. 1994) ("[F]ailure to plead an affirmative defense results in a waiver of the defense and the exclusion of all evidence relevant to it."). In patent infringement suits between private parties, Section 1498(a) merely provides an affirmative defense, and not a jurisdictional bar. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1381 (Fed. Cir. 2002) ("section 1498(a) is an affirmative defense rather than a jurisdictional bar"); *Crater Corp. v. Lucent Techs. Inc.*, 255 F.3d 1361, 1364 (Fed. Cir. 2001); *Sperry Gyroscope Co. v. Arma Eng'g Co.*, 271 U.S. 232, 235-36 (1926) (explaining that the Naval Appropriations Act of 1918, the predecessor to 28 U.S.C. § 1498, created an affirmative defense rather than a jurisdictional bar). Any defense under Section 1498(a) should not be dismissed under Rule 12. *Toxgon Corp.*, 312 F.3d at 1382 ("[A] defense arising under section 1498(a) should be resolved by summary judgment under Rule 56 rather than a motion to dismiss under Rule 12.")

A defendant can waive a Section 1498(a) defense by failing to timely assert it, as Puritan has done here. *See Williams v. Columbia Broad. Sys., Inc.*, 57 F. Supp. 2d 961 (C.D. Cal. 1999) (holding that § 1498 is jurisdictional as to governmental defendants, but in the case of private

defendants, establishes an affirmative defense that must be timely asserted); *see also Sperry Gyroscopic Co.*, 271 U.S. at 235-36 (holding the precursor statute to § 1498 to be non-jurisdictional as to private defendants, merely establishing an affirmative defense). If the government has indeed allowed certain Puritan products to practice Copan's patents via the PREP Act (which it has not), Puritan was still required to have timely pleaded an affirmative defense under Section 1498(a). But Puritan intentionally and knowingly did not timely plead that defense. The October 15, 2021 deadline for pleading the defense has now passed. Doc. No. 210 (Hr'g Tr.) at 28-29 ("THE COURT: . . . My order will be, first of all, that October 15th, as suggested by both [parties], will be the deadline for any amendment of pleadings in the case at which point the Court will know whether the government contract defense under Section 1498(a) is in the case or not . . . ."). Thus, Puritan has waived any argument that swabs manufactured at the P3 facility were made with the authorization and consent of the government.

**B.    The PREP Act Does Not Shield Puritan from Copan's Claims**

The PREP Act cannot be reasonably interpreted as a shield from patent infringement lawsuits. The most natural reading of the PREP Act is that it provides limited immunity from negligence-based lawsuits related to losses suffered by individuals who have been injured by the physical administration or use of a covered countermeasure. It does not extend immunity to lawsuits where damages are unconnected to the administration and use of a product and purely economic in nature. That is, something bad has to happen to a patient before immunity applies. As a New York court stated, in an unpublished opinion, the PREP Act "appears to say, in the manner of common usage of words, that absent willful misconduct, when something bad happens to a person who has received a covered countermeasure (i.e., a vaccine), whichever individual is responsible for that bad result is immune from liability." *Casabianca v. Mount Sinai Med. Ctr., Inc.*, No. 112790/10, 2014 N.Y. Misc. LEXIS 5998, at *11-12 (N.Y. Sup. Ct. Dec. 2,

2014).[3] Thus, immunity applies to a legal claim for a loss **caused by** the administration of use of a covered counter measure. *See* Kevin J. Hickey, *The PREP Act and COVID-19: Limiting Liability for Medical Countermeasures*, Cong. Rsch. Serv., LSB10443, (2021) ("the loss must have a 'causal relationship' with the administration or use of a covered countermeasure"), *available* at https://crsreports.congress.gov/product/pdf/LSB/LSB10443 (last visited: Nov. 5, 2021). That is not the case here as Puritan's motion demonstrates.

> 1. **The PREP Act provides immunity only where there has been physical harm, and should not be read to provide immunity from Copan's claims, all of which are all purely economic in nature**

The term "loss" as used in the PREP Act is best understood in the context of medical malpractice, wrongful death, and other causes of action involving negligence. The PREP Act should not be read to extend its immunity to lawsuits that are purely economic in nature, and which do not involve some type of physical harm. The list of losses the PREP Act identifies includes: "(i) death; (ii) physical, mental, or emotional injury, illness, disability, or condition; (iii) fear of physical, mental, or emotional injury, illness, disability, or condition, including any need for medical monitoring; and (iv) loss of or damage to property, including business interruption loss." 42 U.S.C. § 247d-6d(a)(2)(A). While this list is not exhaustive, it helps illuminate that any "loss" must be related to physical harm caused by the "administration or use" of the covered countermeasure. Even business interruption losses generally require some

---

[3] In *Casabianca*, a provider distributed the H1N1 vaccine to certain eligible persons who received priority while there were shortages, but the decedent did not receive the vaccine because he did not fit in those categories. *Casabianca*, 2014 N.Y. Misc. LEXIS 5998, at *1. After his death, his estate sued the provider, and the court held that PREP Act immunity did not apply because it only applies to the actual use of the vaccine for which it was intended. *Id.* at *4-5. The OGC disagreed with the holding of *Casabianca*, because "administration" is broader than the "physical provision of a countermeasure" and encompasses "activities related to management and operation of programs and locations for providing countermeasures to recipients..., but only insofar as those activities directly relate to the countermeasure activities." OGC Advisory Op. 20-04 at 7 (Oct. 23, 2020), *available* at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/AO%204.2_Updated_FINAL_SIGNED_10.23.20.pdf (last visited Nov. 5, 2021). In other words, when triaging, the decision to administer a counter measure to one patient and not to another, is still considered "relating to" administration of the counter measure.

physical damage. *See Howard Stores Corp. v. Foremost Ins. Co.*, 441 N.Y.S.2d 674, 676 (N.Y. App. Div. 1981) (no coverage under terms of policy for business interruption loss at two stores where no physical damage occurred), *aff'd*, 439 N.E.2d 397 (N.Y. 1982); *Harry's Cadillac-Pontiac-GMC Truck Co., Inc. v. Motors Ins. Corp.*, 486 S.E.2d 249, 250-51 (N.C. Ct. App. 1997) (no business interruption coverage where no "direct physical loss" to premises under terms of policy; loss occurred due to inaccessibility of plaintiff's dealership due to snowstorm); *Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.*, No. 20-cv-01470, 2021 U.S. Dist. LEXIS 179812, at *16 (D. Colo. Sept. 17, 2021) (describing "coverage for business interruption loss that is 'a direct result of physical loss or damage of the type insured.'"); *see also* 11A Steven Plitt et al., *Couch on Insurance* § 167:15 (3d ed. updated 2021) ("business interruption policies generally require some physical damage to the insured's business in order to invoke coverage").

Further support showing that the PREP Act is limited to losses related to physical harm caused by the administration or use of a covered countermeasure is found in the March 17, 2020 Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19. The Declaration emphasizes that "[t]he definition of 'administration' extends only to **physical** provision of a countermeasure **to a recipient**, such as vaccination or handing drugs to patients . . . ." 85 Fed. Reg. at 15,200 (emphasis added).[4] It also sets forth the aforementioned "Countermeasure Injury Compensation Program (CICP) to provide benefits to eligible individuals who sustain a serious **physical** injury or die as a direct result of the administration or use of a Covered Countermeasure." 85 Fed. Reg. at 15,201 (emphasis

---

[4] As mentioned in fn. 2, *supra,* the "physical administration of a countermeasure" includes the decision to physically administer the countermeasure to one patient at the expense of another. *Lopez v. Life Care Ctrs. of Am., Inc.*, No. 20-0958, 2021 U.S. Dist. LEXIS 56102, at *35 (D.N.M. Mar. 24, 2021) ("This specific example makes clear that the non-administration of a vaccine in limited supply necessarily arises from the decision to administer the vaccine to others first.").

added); *see also Khalek v. S. Denver Rehab., LLC*, No. 1:20-cv-02240, 2021 U.S. Dist. LEXIS 113165, at *7 (D. Colo. June 11, 2021) (citing § 247d-6e) ("If immunity [under the PREP Act] applies, the injured person may seek compensation from the [CICP], a federal regulatory program that covers some losses associated with the use of covered countermeasures."). All of the injuries contemplated by the CICP appear to be related to the **physical harm** caused by the administration or use of vaccines, drugs, or ventilators.[5] As one court has noted, "the injury must be one 'caused by physical provision of a countermeasure to a recipient'. In other words, something bad, perhaps not anticipated, has occurred from the administration or use of the vaccine, no matter what circumstances led to that use." *Casabianca*, 2014 N.Y. Misc. LEXIS 5998, at *11-12.

Thus, the most natural reading of "loss" under the PREP Act is that it is a "loss" associated with physical harm, and does not include purely economic losses, and certainly does not include patent damages. This understanding is in agreement with the "economic loss doctrine." The economic loss doctrine holds that purely economic losses sounding in tort, particularly in negligence, are not recoverable as damages or otherwise—recovery is permitted only where there is personal injury and/or physical damage to property. *See, e.g.*, *Oceanside at Pine Point Condominium Owners Ass'n v. Peachtree Doors, Inc*., 659 A.2d 267, 270 (Me. 1995) ("Under tort theories, recovery is permitted for **personal injuries** and **physical damage to property** . . . .") (emphasis added). Courts have "long stood with the majority of jurisdictions in embracing the economic loss rule . . . [that] '[i]n the absence of personal injury or physical damage to property [beyond the defective product itself], the negligent supplier of a defective product is not ordinarily liable in tort for simple economic loss.'" *Wyman v. Ayer Properties,*

---

[5] *See supra* p. 3 note 1.

*LLC*, 11 N.E. 3d 1074, 1079 (Mass. 2014) (citation omitted); *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 46 (Mass. 2009) ("the economic loss doctrine bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss."); *R.L. Whipple Co., Inc. v. Pondview Excavation Corp.*, 887 N.E.2d 1095, 1097 (Mass. App. Ct. 2008) ("Massachusetts generally follows the traditional rule 'that purely economic losses are unrecoverable in tort . . . actions in the absence of personal injury or property damage.'") (quoting *FMR Corp. v. Boston Edison Co.*, 613 N.E.2d 902, 903 (Mass. 1993)). While there is an exception to the economic loss doctrine where a special relationship exists between the parties, no such special relationship exists between Copan and Puritan. *See, e.g.*, *Szulik v. State St. Bank & Tr. Co.*, 935 F. Supp. 2d 240, 270-71 (D. Mass. 2013) ("[C]ourts have declined to apply the economic loss doctrine to tort claims against a fiduciary." *Id.* at 271 n.11).

Indeed, in the present lawsuit, none of Copan's claims allege that Puritan caused physical harm to any person or property. As such, the PREP Act cannot be read to immunize Puritan from Copan's claims, which are purely economic in nature. Puritan's motion to dismiss should therefore be denied.

**2.    Immunity under the PREP Act applies only to claims for loss caused by the "administration to or use by an individual" of a covered countermeasure**

The PREP Act is limited to claims "caused by, arising out of, relating to, or resulting from the **administration to or the use by** an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1) (emphasis added). "The definition of 'administration' extends **only to physical** provision of a countermeasure to a recipient, such as vaccination or handing drugs to patients . . . ." 85 Fed. Reg. at 15,200 (emphasis added). The PREP Act is unequivocal on this point. The loss must be caused by the administration to or use by an individual of a covered countermeasure.

*Casabianca*, 2014 N.Y. Misc. LEXIS 5998, at *6 ("But what is clear is that whenever the topic of immunity from suit is discussed, qualifying words are always used. What are those words? They are 'resulting from the administration to or the use by an individual of a covered countermeasure . . . .'"). Thus, "a liability claim alleging an injury . . . that was not directly related to the countermeasure activities is not covered [by the PREP Act]" 85 Fed. Reg. at 15,200. In the PREP Act, Congress provided immunity under both federal and state law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the **administration to or the use** by an individual of a covered countermeasure if the HHS Secretary issues a declaration. 42 U.S.C. § 247d-6d(a)(1).

For example, in 42 U.S.C. § 247d-6d(a) the entire clause (with emphasis added) reads as follows:

> Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or ***resulting from the administration to or the use by an individual of a covered countermeasure*** if a declaration under subsection (b) of this section has been issued with respect to such countermeasure.

Section 247d-6d(a)(3) says (with emphasis added) that:

> Subject to the other provisions of this section, immunity under paragraph (1) with respect to a covered countermeasure applies only if --
>
> (A) the countermeasure was ***administered or used*** during the effective period of the declaration that was issued under subsection (b)of this section with respect to the countermeasure;
>
> (B) the countermeasure was ***administered or used*** for the category of diseases, health conditions, or threats to health specified in the declaration; and
>
> (C) in addition, in the case of a covered person who is a program planner or qualified person with respect to the ***administration or use of*** the countermeasure, the countermeasure was ***administered to or used*** by an individual who [was in a population or geographic area specified in the declaration].

The Act excludes from its protections instances where willful misconduct was proved by the plaintiff. Section 247d-6d(c) sets forth the definition of willful misconduct, and Section 247d-6d(c)(4), entitled "Defense for acts or omissions taken pursuant to Secretary's declaration," states that an individual "shall not have engaged in 'willful misconduct' as a matter of law where [the individual] acted consistent with applicable directions, guidelines or recommendations by the Secretary regarding the **administration or use of** a covered countermeasure . . . ." (emphasis added). In that same subsection, the act states that one of the documents needed to prove that a patient suffered injury as a result of the vaccine is an affidavit from a non-treating physician. The physician must give reasons for his/her belief that the patient suffered serious physical injury or death "and that such injury or death was proximately caused by the **administration or use** of a covered countermeasure" § 247d-6d(e)(4)(C)(ii) (emphasis added). Thus, a proper reading of the PREP Act restricts its immunity to those cases in which a claimed loss was caused by the administration to or use by an individual of a covered countermeasure.

> **3.    Copan asserts claims that are not caused by "administration to or use by an individual" of a covered countermeasure**

Puritan's motion fails to address the PREP Act's requirement of a causal link between the "loss" and the administration to or use by an individual of a covered countermeasure. Puritan does not contend that any of the flocked swabs produced at its P3 facility were actually administered to or used by any individual. This alone is fatal to Puritan's motion.

Moreover, Copan asserts claims of patent infringement that arise prior to, and are independent from, any use of the infringing product. For example, Counts VII, VIII, and X of the Complaint assert that Puritan infringes certain claims covering the swab itself. (Doc. No. 84). Puritan infringes these claims as soon as the swabs are made—well before they are administered to or used by an individual. *See Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464,

1468 (Fed. Cir. 1990) ("[A]pparatus claims cover what a device *is*, not what a device *does*." (emphasis in original)); *Linear Tech. Corp v. Impala Linear Corp.*, No. 98-1727, 2001 WL 36126932, at *15 (N.D. Cal. Sept. 21, 2001) ("An apparatus claim is infringed if the claimed device is manufactured."). Because of that timing, there can be no causal relationship between Copan's claims of patent infringement and any administration to or use of a covered countermeasure to an individual as required by the PREP Act. For that additional reason, Puritan's motion to dismiss such claims should be denied.

### C.   Puritan's Motion Fails on Procedural Grounds

The Court need not reach the above issues, because Puritan's motion fails on procedural grounds as well. Puritan's motion to dismiss is highly factual. It is based on alleged facts that occurred after the discovery period closed and that were not used to support Copan's Amended Complaint. In such situations it is proper to deny a motion to dismiss. A similar case from the District of New York denied a motion to dismiss where the defendant in a patent litigation moved to dismiss based on alleged contracts with the government. In *Defenshield, Inc. v. First Choice Armor & Equip., Inc.,* the court noted:

> [T]he Court finds that Plaintiff's Amended Complaint does not allege facts that, if taken as true, establish the second element of a 28 U.S.C. § 1498 defense, which requires Defendants to demonstrate that the government authorized, or consented to, the manufacture of the Rolling Bunker. Defendants attempt to compensate for this by providing the Court with a copy of a United States Army RFQ and an affidavit explaining the RFQ's significance. Although the RFQ may contain evidence that the United States government authorized infringement of Plaintiff's '811 patent, the Court may not properly consider the RFQ in deciding Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), because the RFQ is not (1) attached to the Plaintiff's Amended Complaint, (2) incorporated by reference in Plaintiff's Amended Complaint, (3) integral to Plaintiff's Amended Complaint, or (4) the type of matter of which the Court may take judicial notice as factual background of the case.

No. 5:10-CV-1140, 2012 WL 1069088, at *6 (N.D.N.Y. Mar. 29, 2012) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011)). Here, pursuant to the Court's recent Order,

Copan has propounded discovery requests that Puritan has not yet answered regarding contracts related to the P3 facility that have not yet been produced. Copan has clearly stated a claim for which relief can be granted, and at a minimum should be allowed to explore the factual basis for Puritan's new allegations regarding government authorization to practice Copan's patents if the Court determines that there is merit to Puritan's interpretation of the PREP Act. For this additional reason, Puritan's motion should be denied.

## V. <u>CONCLUSION</u>

For these reasons, Puritan's motion to dismiss should be denied in its entirety.

Dated: November 5, 2021

/s/Richard P. Olson
Richard P. Olson
Emily P. Crowley
CURTIS THAXTER LLC
One Canal Plaza, Suite 1000
P.O. Box 7320
Portland, ME 04112-7320
(207) 774-9000
rolson@curtisthaxter.com
rcrowley@curtisthaxter.com

*Pro Hac Vice*:

James M. Wodarski
Michael C. Newman
Michael Renaud
Peter J. Cuomo
Daniel B. Weinger
Matthew A. Karambelas
Courtney Herndon
Andrew H. DeVoogd
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
JWodarski@mintz.com
MCNewman@mintz.com
MTRenaud@mintz.com
PJCuomo@mintz.com
DBWeinger@mintz.com
MAKarambelas@mintz.com
CHerndon@mintz.com
AHDevoogd@mintz.com

*Counsel for Plaintiffs*
*Copan Italia S.p.A. and*
*Copan Diagnostics, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 5, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause an electronic notice to be sent to all registered counsel of record.

Dated:   November 5, 2021           <u>*/s/ Richard P. Olson*</u>
                                    Counsel for Plaintiffs
                                    Copan Italia S.p.A. and
                                    Copan Diagnostics, Inc.