**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

COPAN ITALIA S.P.A., and
COPAN DIAGNOSTICS, INC.,

       Plaintiffs,

v.

PURITAN MEDICAL PRODUCTS
COMPANY LLC, PURITAN
DIAGNOSTICS LLC, HARDWOOD
PRODUCTS COMPANY LP, AND
HARDWOOD PRODUCTS
COMPANY LLC,

       Defendants.

Civil Action No. 1:18-cv-00218-SDN

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**STATEMENT OF MATERIAL FACTS AND**
**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to Federal Rule 56 and Local Rule 56(c), Plaintiffs Copan Italia S.P.A., and Copan Diagnostics, Inc. ("Copan") hereby submits their Opposition to Defendants Puritan Medical Products Company LLC, Puritan Diagnostics LLC, Hardward Products Company LP, and Hardwood Products Company LLC's (collectively, "Puritan") Statement of Material Facts in support of Puritan's Motion for Partial Summary Judgment of Immunity Under the PREP Act.

## GENERAL OBJECTION

Plaintiffs have made a reasonable effort to respond, but request that the Court liberally strike or disregard statements of fact presented by Defendants that are not supported by cited portions of the record and take all inferences in favor of Plaintiffs based, collectively, on whatever version of the facts referenced below is the most favorable to the Plaintiffs.

## COPAN'S RESPONSE TO PURITAN'S STATEMENT OF MATERIAL FACTS

### I.    P3 CONTRACT FACTS

**1**. Puritan was awarded a U.S. Government ("government") contract with reference number FA8730-20-C-0056 on July 29, 2020 (the "P3 Contract"). *See* Templet Decl. at ¶¶ 3-5, Exs. 1-4; PUR-PREP- 00007923-91, PUR-PREP-00012035.

**RESPONSE:** Qualified. The document ECF 289-2 bearing Bates number PUR-PREP-00007923-91 is referred to as an "Undefinitized Contract Action (UCA)" that "constitutes a written preliminary contractual instrument that authorizes the contractor to begin work immediately on their Industrial Base production expansion (IBX) capability." *See* ECF 289-2 (Ex. 1) at PUR-PREP-00007924. The document further states that "[t]his UCA does not constitute the final complete expression of either party's agreement." *Id.*

**2**. The stated purpose of the P3 Contract was to "expand the domestic production of flock tipped swabs required by medical professions for COVID-19 testing." PUR-PREP-00007988.

**RESPONSE:** Qualified. The summary of the Statement of Work (SOW) included as attachment 1 to the document bearing Bates range PUR-PREP-00007923-91 recites a broader purpose as it is noted that efforts will be conducted to "expedite and expand the domestic production of flock tipped swab resources needed to respond to the spread of COVID-19, *as well as ensure sufficient domestic capacity and supply <u>for future pandemics</u>*." *See* ECF 289-2 (Ex. 1) at PUR-PREP-00007988 (emphasis added).

**3**. The U.S. Department of the Air Force ("Air Force") issued the P3 Contract on behalf of the government. *See* PUR-PREP-00007923.

**RESPONSE:** Qualified. Copan lacks requisite knowledge to admit as the contract was between "[t]he United States Air Force (USAF), Air Force Material Command (AFMC), Air Force Life Cycle Management Center (AFLCMC), PEO Digital (HB), Foreign Military Sales Division (HBN), Contracting Officer (HBNK) 11 Eglin Street, Bldg. 1618 Hanscom AFB, MA 01731-2100 is the contracting activity." *See* PUR-PREP-00011562, at PUR-PREP-00011563.

**4**. The Air Force served as the Executive Agent for the U.S. Department of Defense projects under Title III of the Defense Production Act during the COVID-19 pandemic, as evidenced by a Government Accountability Officer ("GAO") report prepared for Congress. *See* Scarpati Decl. at ¶ 3, Ex. 1; PUR-PREP-00007744-83. Table 5 in this report also lists the P3 Contract. *See* PUR-PREP-00007781.

**RESPONSE:** Qualified. The referenced materials do not confirm that the "Air Force served as the Executive Agent for the U.S. Department of Defense projects under Title III of the Defense Production Act during the COVID-19 pandemic" and instead, cast doubt on that statement. ECF 289-7 (Ex. 1) bearing Bates range PUR-PREP-00007744-83 indicates that "[t]he Air Force serves as the Executive Agent for DOD's Title III program and maintains a program

office to execute the authority under the guidance of the Office of the Secretary of Defense." *See* ECF 289-7 (Ex. 1) at PUR-PREP-00007753. However, the referenced page bearing Bates No. PUR-PREP-00007781 is not limited to programs executed by the Office of the Secretary of Defense.  *See id.* ("Table 5: The Departments of Defense *and Health and Human Services Domestic Production Expansion Projects*, Defense Production Act Title Ill *and Similar Actions*") (emphasis added). Moreover, at PUR-PREP-00007745, the document states that "[i]n light of COVID-19 supply issues, an August 2020 executive order also directed that *agencies* take steps to reduce U.S. reliance on foreign manufacturers of medical supplies and other items." ECF 289-7 (Ex. 1) at PUR-PREP-00007745. The document further discloses that this August 2020 Executive Order No. 13944 "[p]rovides authority to the *Secretary of Health and Human Services* to determine priorities and allocations of essential medicines, medical countermeasures, and critical inputs, including active pharmaceutical ingredients." *See id.* at PUR-PREP-00007754 (emphasis added). Copan is not aware of information demonstrating that the Secretary of Health and Human Services (HHS) ever acted on behalf of the Air Force in doing so. Additionally, PUR-PREP-00007772 states that Executive Order No. 13944 issued on August 6, 2020, "requires federal agencies to take swift action in some cases to implement the policy" while again referencing HHS as the planning agency for medical items essential to treating and mitigating Covid-19, not the Air Force. *Id.* at PUR-PREP-00007772.

**5**. The P3 Contract authorized Puritan to "procure a new facility" to fulfill its contractual obligations to increase domestic flocked swab manufacturing capacity. *See* PUR-PREP-00007988.

**RESPONSE:** Qualified. The document states that Puritan shared its intent to procure a new facility and add new machinery, including new Ultra Flock Tipping machines, via capital investment. *See* ECF 289-2 (Ex. 1) at PUR-PREP-00007988.

**6**. Puritan constructed a new manufacturing facility pursuant to the P3 Contract in Pittsfield, Maine, and this facility is referred to by Puritan as "P3." *See* ECF No. 204-2 (Dixon Decl.) at ¶¶ 1-4.

**RESPONSE:** Qualified. ECF No. 204-2 (Dixon Decl.) at ¶¶ 1-4 are statements without any citations to corroborating materials. As such, they represent inadmissible hearsay from an interested person and not evidence that can be considered on a motion for summary judgment. *See id.* at ¶ 1 ("I am the 'New Products & Process Engineer' at Puritan and have held this position since 2007.").

**7**. The P3 Contract includes a "Statement of Work" ("SOW") section, which states that "[i]n order to meet the domestic demand of 50 million flock tip swabs per month, [Puritan] will have to install and run an additional 20 Ultra Flock Tipping machines and 6 Automated Packaging machines. [Puritan] intends to procure a new facility and a subset of these machines (i.e., 5 Ultra machines) via capital investment. This effort will fund required upgrades of the facility and the balance of the machines." PUR-PREP-00007988.

**RESPONSE:** Qualified. The document bearing Bates range PUR-PREP-00007923 - PUR-PREP-00007991 recites a broader purpose as it is noted that efforts will be conducted to "expedite and expand the domestic production of flock tipped swab resources needed to respond to the spread of COVID- 19, *as well as ensure sufficient domestic capacity and supply <u>for future pandemics</u>*." *See* ECF 289-2 (Ex. 1) at PUR-PREP-00007988 (emphasis added).

**8**. The SOW section in the P3 Contract includes a "REQUIREMENTS" section, which states that "[Puritan] shall procure / produce the following equipment: • 15 Ultra Flock Tipping machines (Puritan Medical proprietary design) • 6 Automated Packaging machines (OEM-MULTIVAC International)." PUR-PREP-00007989.

**RESPONSE:** Admitted.

**9**. The SOW section in the P3 Contract further requires that "[Puritan] shall assemble, install and test a total of 20 Ultra Flock Tipping machines and 6 Automated packaging machines" (PUR-PREP-00007989), and "report all test results" to the government. PUR-PREP-00007990.

**RESPONSE:** Qualified. The document shows that government requested 15 Ultra Flock Tipping machines, and that the "total of 20 Ultra Flock Tipping machines and 6 Automated packaging machines" represents the sum of that request "as well as the ***Contractor-funded production equipment*** cited in section 2." ECF 289-2 (Ex. 1) at PUR-PREP-00007989 (emphasis added).

**10**. The SOW section in the P3 Contract states that "[g]overnment acceptance will be provided in writing and be based on evidence of successful completion of all tests in Section 3.2.3 and verification (via demonstration or analysis) that the Contractor's upgraded facility is capable of producing 45 Million flock tipped swabs per month." *Id.*

**RESPONSE:** Admitted.

**11**. Puritan installed 20 Ultra Flock Tipping Machines at P3, as required by the P3 Contract. *See* Templet Decl. at ¶ 4, Ex. 3; PUR-PREP-00005138.

**RESPONSE:** Denied. The "P3 Contract" indicates that 15 Ultra Flock Tipping Machines were required under the contract. *See* ECF 289-2 (Ex. 1) at PUR-PREP-00007989 (3.2.2. Flock Tipping and Packaging Machines); *Id.* at PUR-PREP-00007988 ("The Contractor intends to procure a new facility and a subset of these machines (i.e., 5 Ultra machines) via capital investment.").

**12**. The Air Force conducted a site visit to P3. *Id.*

**RESPONSE:** Admitted.

**13**. The Air Force confirmed in writing that "[Puritan] has successfully met contract acceptance criteria (i.e., successful completion of all qualification tests and verification… that the [P3] facility is capable of producing 45 Million flock tipped swabs per month." *Id.*

**RESPONSE:** Admitted.

**14**. The Air Force confirmed in writing that "the Government hereby validates and accepts that Puritan Medical Products Co. LLC has fulfilled all contract performance requirements [under the P3 Contract.]" *Id.*

**RESPONSE:** Qualified. The document bearing Bates No. PUR-PREP-00005138 with the subject "Contract F A8730-20-C-0056, CDRL A004 Test Results and Final Contract Acceptance," indicates that as of August 2, 2021, Puritan had successfully met contract acceptance criteria by installing "twenty (20) Ultra flock tipping machines and six (6) MULTIVAC packaging machines" and demonstrating "that the Contractor's upgraded production facility is capable of producing 45 Million flock tipped swabs per month[.]" *See* ECF 289-4 (Ex. 3) at PUR-PREP-00005138. Notwithstanding the requirement that Puritan demonstrate a production capacity of 45 Million flock tipped swabs per month (*see* ECF 289-2 (Ex. 1) at PUR-PREP-00007990), the document referenced in SOF 13 is silent concerning how many swabs were actually produced by Puritan, for the government, pursuant to the contract.

**15**. The P3 Contract was modified by an addendum (*see* Templet Decl. at ¶ 5, Ex. 4; PUR-PREP-00007916-22), that added language expressly recognizing that Puritan's P3 factory has PREP Act immunity, that flocked swabs manufactured at P3 are a "Covered Countermeasure," and that the Puritan is a "Covered Person," in accordance with the PREP Act. PUR-PREP-00007921-22.

**RESPONSE:** Qualified. In context, the purported PREP Act immunity language expresses agreement "that Contractor shall be immune from suit and liability to the extent and as long as Contractor's activities fall within the terms and conditions of the PREP Act and the PREP Act Declaration." ECF 289-5 (Ex. 4) at PUR-PREP-00007922. Moreover, the addition of this language came at suggestion of Defendant's counsel who had advocated for its inclusion since July of 2020, and before the P3 facility was constructed. *See* PUR-PREP-00008473-74. For example, during discussions about contract FA8730-20-C-0056, Defendant's counsel emailed the Contracting officer to include the identified language. PUR-PREP-00008473-74 ("Below is proposed language to invoke the liability immunity provisions of the Public Readiness and Emergency Preparedness Act ("PREP Act").  The proposed language is based on language that we have seen in contracts with ASPR.  I have attempted to tailor the language to fit this transaction – but it may need further refinement as you finalize the scope of work and deliverables."). Moreover, in the original contract, Puritan agreed to indemnify the Government for certain liabilities arising under the contract, including any patent infringement claims related to the flocked swabs made at its P3 facility. *See* ECF 289-2 (Ex. 1) at PUR-PREP-00007938 ("(h) Patent indemnity. The ***Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent***, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.") (emphasis added).  Notably, this language is not rescinded anywhere in the purported addendum. *See* ECF 289-5 (Ex. 4) at PUR-PREP-00007916-22.

**16**. Flocked swab production at the P3 facility began in 2021. *See* ECF No. 204-2 (Dixon Decl.) at ¶¶ 1-4.

**RESPONSE:** Qualified. ECF No. 204-2 (Dixon Decl.) at ¶¶ 1-4 are statements without any citations to corroborating materials.  As such, they represent inadmissible hearsay from an interested person and not evidence that can be considered on a motion for summary judgment. *See id.* at ¶ 1 ("I am the 'New Products & Process Engineer' at Puritan and have held this position since 2007.").

17. Puritan markets its flocked swabs using the HydraFlock®,  PurFlock®,  and PurFlock Ultra® trademarks. See, e.g., ECF No. 84 at ¶¶ 61, 63.

**RESPONSE:** Admitted.

II.  **PREP ACT FACTS**

18. The Secretary of the U.S. Department of Health and Human Services ("Secretary") issued a declaration under the PREP Act for the COVID-19 pandemic on March 10, 2020 ("Declaration"). *See* 85 Fed. Reg. 15198, 15198–203 (Mar. 17, 2020).

**RESPONSE:** Admitted.

19. The Secretary invoked the PREP Act's immunity provision to cover "the full range of qualified countermeasures" possible under the statutory text. *See id.*  at 15201 (invoking "[l]iability immunity as prescribed in the PREP Act.").

**RESPONSE:** Denied. The complete language in the declaration is not quoted and there is no quote reciting "the full range of qualified countermeasures." The March 2020 Declaration does confirm that "the PREP Act's liability immunity applies to "Covered Persons" ***with respect to administration or use*** of a Covered Countermeasure." *Id.* (emphasis added). Accordingly, the Declaration acknowledges that the scope of liability immunity for covered persons must be tied to specific actions and does not simply to any and all liabilities involving qualified countermeasures. *See id.*

**20**. The initial Declaration limited immunity to "Covered Countermeasures" obtained through only two means of distribution, specifically:

> Recommended Activities related to (a) present or future federal contracts, cooperative agreements, grants, other transactions, interagency agreements, or memoranda of understanding or other federal agreements; or (b) activities authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute, or dispense the Covered Countermeasures following a Declaration of an emergency.

*Id.* at 15200.

**RESPONSE:** Admitted.

**21**. The "Fourth Amendment to Declaration under the PREP Act for Medical Countermeasures Against COVID-19" (Dec. 9, 2020) expanded the means of distribution for which immunity is available by adding a third channel that includes:

> (c) Covered Countermeasures that are: i. Licensed, approved, cleared, or authorized by the FDA (or that are permitted to be used under an Investigational New Drug Application or an Investigational Device Exemption) under the FD&C Act or PHS Act to treat, diagnose, cure, prevent, mitigate, or limit the harm from COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom.

85 Fed Reg. 79190, 79196 (Dec. 9, 2020).

**RESPONSE:** Qualified. Liability protections "are afforded for the administration or use of a Covered Countermeasure" and apply to Covered Persons only for Recommended Activities. *See* 85 Fed Reg. 79190, 79196-197 (Dec. 9, 2020).

**22**. The Fourth Amendment to the Declaration states that "[l]iability protections for all Covered Countermeasures identified in Section VII(c) of this Declaration begins on the date of this amended Declaration [i.e., December 9, 2021] and lasts through (a) the final day of the Declaration of Emergency is in effect, or (b) October 1, 2024, whichever occurs first." *Id.* at 79198.

**RESPONSE:** Admitted.

**23**. Liability immunity under the PREP Act was subsequently extended until December 31, 2024. *See* 88 Fed. Reg. 30769, 30775-77 (May 12, 2023).

**RESPONSE:** Qualified. The Eleventh Amendment to the Declaration states, "Liability protections for all Covered Countermeasures identified in Section VII(c) of this Declaration that are licensed, approved or cleared by the FDA begin on December 9, 2020, and last through the final day the Declaration of Emergency is in effect or December 31, 2024 whichever occurs first." *See* 88 Fed. Reg. 30769, 30775 (May 12, 2023).

**24**. The PREP Act further provides an "additional 12 months of liability protection" (after December 1, 2024) for manufacturers. 88 Fed. Reg. 20769, 30777 ("XIII. Additional Time Period of Coverage").

**RESPONSE:** Qualified. The Declaration states:

> I have determined that an additional 12 months of liability protection is reasonable to allow for the manufacturer(s) to arrange for disposition of the Covered Countermeasure, including return of the Covered Countermeasures to the manufacturer, and for Covered Persons to take such other actions as are appropriate to limit the administration or use of the Covered Countermeasures. Covered Countermeasures obtained for the SNS during the effective period of this Declaration are covered through the date of administration or use pursuant to a distribution or release from the SNS.

*See* 88 Fed. Reg. 30769, 30777 (May 12, 2023). The Declaration extends liability protection for manufacturers in particular instances.

**SOF 25**. The patents asserted by Copan in the present litigation expired on March 31, 2024. *See, e.g.,* ECF Nos. 84-1, 84-2, 84-3, 84-4, 84-5 (copies of the asserted patents).

**RESPONSE:** Admitted.

## III.    FDA FACTS

**26**. The U.S. Food and Drug Administration ("FDA") maintains a searchable online database containing archived copies of Emergency Use Authorization ("EUA") letters and

supporting materials for COVID-19 diagnostic tests, at "www.fda.gov/medical-devices/covid-19-emergency-use-authorizations-medical-devices/in-vitro-diagnostics-euas-molecular-diagnostic-tests-sars-cov-2" ("FDA Database"). PUR-PREP-00008103-63; *see* Scarpati Decl. at ¶ 4, Ex. 2.

**RESPONSE:** Qualified. The referenced URL leads to a site bearing the title "In Vitro Diagnostics EUAs - Molecular Diagnostic Tests for SARS-CoV-2." The site bears no indication that it contains a complete repository of all of the Emergency Use Authorization ("EUA") letters nor supporting materials for COVID-19 diagnostic tests. *See* ECF 289-8 (Ex. 2) at PUR-PREP-00008103-63.

**27**. The FDA Database includes a section titles, "Individual EUAs for Molecular Diagnostic Tests for SARS-CoV-2," that provides a table described as "includ[ing] information about authorized SARS-CoV-2 molecular diagnostic tests. These emergency use authorizations (EUAs) have been issued for each individual test with certain conditions of authorization required of the manufacturer and authorized laboratories." PUR-PREP-00008104.

**RESPONSE:** Qualified. The URL "www.fda.gov/medical-devices/covid-19-emergency-use-authorizations-medical-devices/in-vitro-diagnostics-euas-molecular-diagnostic-tests-sars-cov-2" includes an embedded link entitled "Individual EUAs for Molecular Diagnostic Tests for SARS-CoV-2." Following that link takes one to a new page with multiple tables, including one with this description.

**28**. The EUAs, and documents related thereto listed in the FDA Database, are finalized and in effect. *See* Scarpati Decl. at ¶ 5, Ex. 3.

**RESPONSE:** Admitted.

**29**. The PDF copy of EUA letters provided in the FDA Database are normally unsigned, but are finalized and in effect. *See* Scarpati Decl. at ¶ 5, Ex. 3.

**RESPONSE:** Admitted.

30. The FDA website provides a separate webpage listing EUAs that have been terminated or revoked. *See* PUR-PREP-00008067-85; Scarpati Decl. at ¶ 6, Ex. 4.

**RESPONSE:** Admitted.

31. The FDA Database indicates that the "Amazon Real-Time RT-PCR Test for Detecting SARS-CoV-2" received EUA No. 202760 on March 25, 2021. *See* PUR-PREP-00008132, PUR-PREP-00007791; *see* Scarpati Decl. at ¶ 7, Ex. 5.

**RESPONSE:** Qualified. EUA No. 202760 was authorized on May 28, 2021. ECF 289-11 (Ex. 5) at PUR-PREP-00007791.

32. The original March 28, 2021 EUA "letter authorized the Amazon Real-Time RT-PCR Test for Detecting SARS-CoV-2 for the qualitative detection of nucleic acid from SARS-CoV-2 in anterior nasal swab specimens that are self-collected by any individuals (18 years of age or older), including individuals without symptoms or other reasons to suspect COVID-19." PUR-PREP-00007791 at FN2.

**RESPONSE:** Qualified. The original EUA is dated May 25, 2021. ECF 289-11 (Ex. 5) at PUR-PREP-00007792 at n.2.

33. The FDA Database entry for the "Amazon Real-Time RT-PCR Test for Detecting SARS-CoV-2" (EUA No. 202760) includes a link to access an "EUA Summary" document (see PUR-PREP-00008132), which states that this assay was authorized to include an "[i]ndividually wrapped sterile flocked nylon swab for anterior nasal specimen collection" supplied by "Puritan Medical Products" having part number "25-3306-U." PUR-PREP-00000084; *see* Scarpati Decl. at ¶ 8, Ex. 6.

**RESPONSE:** Qualified. Exhibit 6 of the Scarpati Declaration includes a number of tables, including Table 5 entitled "Amazon COVID-19 Collection Kit (supervised on-site collection)" which includes the qualification "The Amazon COVID-19 Collection Kit contains either a collection tube containing PrimeStore MTM or a collection tube containing PBS, together with the applicable listed components[.]" ECF 289-12 (Ex. 6) at PUR-PREP-00000084 n.1. For the PrimeStore MTM, "Individually wrapped sterile flocked nylon swab for anterior nasal specimen collection" are supplied by ASP Global (Part number 8205). *Id.* For Phosphate Buffered Saline, "Individually wrapped sterile flocked nylon swab for anterior nasal specimen collection" are supplied by both Puritan Medical Products (Part Number 25-3306-U) and Medico Technology (Part Number 96000BQ)." *Id.* The document provides no indication of how many flocked nylon swabs (if any) were provided by either one. *Id.* Table 6 entitled "Amazon COVID-19 Test Collection Kit (unsupervised at-home collection) and Amazon On-site COVID-19 Test Collection kit ( on-site unsupervised collection)" also references flocked swabs made by both Puritan Medical Products (Part Number 25-3306-U) and Medico Technology (Part Number 96000BQ). ECF 289-12 (Ex. 6) at PUR-PREP-00000085. The document again provides no indication of how many flocked nylon swabs (if any) were provided by either supplier. *Id.*

**34**. The FDA Database indicates that the "HealthQuest Esoterics TaqPath SARS-CoV-2 Assay" received an EUA on June 23, 2020 (see PUR-PREP-00008152, PUR-PREP-00007727), and the letter which granted this EUA states this assay was indicated for "Qualitative detection of nucleic acid from SARS-CoV-2 in nasopharyngeal, oropharyngeal, anterior nasal, and mid-turbinate nasal swabs, as well as nasopharyngeal wash/aspirate or nasal aspirates, and bronchoalveolar lavage (BAL) specimens from individuals suspected of COVID-19." PUR-PREP-00007727; *see* Scarpati Decl. at ¶ 9, Ex. 7.

**RESPONSE:** Admitted.

35. The FDA Database entry for the "HealthQuest Esoterics TaqPath SARS-CoV-2 Assay" includes an "EUA Summary" which states that "[a]nterior nasal swabs, mid-turbinate nasal swabs, oropharyngeal (throat) swabs, nasopharyngeal swabs, nasopharyngeal wash/aspirate or nasal aspirate specimens, and BALs should be collected, transported and stored according to standard procedures," and that "[t]he swabs that were used for assay validation include Puritan PurFlock Ultra Collection swabs (Cat # 25-3317-U and 25-3606-U)." PUR-PREP-00007735; *see* Scarpati Decl. at ¶ 10, Ex. 8.

**RESPONSE:** Qualified. Exhibit 8 of the Scarpati Declaration states in part that "[t]he swabs that were used for assay validation include Puritan PurFlock Ultra Collection swabs (Cat # 25-3317-U and 25-3606-U) transported using ClearPrep Specimen Transport Medium (Biomedical Solutions, Cat # CV12001). *Other flocked swabs with plastic shafts in appropriate transport media discussed in the Clinical Laboratory Diagnostics Test FAQs (UTM, VTM, saline, PBS) are also acceptable* for testing with the HealthQuest Esoterics assay." ECF 289-14 (Ex. 8) at PUR-PREP-00007735 (emphasis added).

36. The FDA Database indicates that the "Assurance SARS-CoV-2 Panel DTC" received EUA No. 210025 on February 13, 2021 (see PUR-PREP-00008130, PUR-PREP-00007885), and that the original EUA letter "authoriz[ed] the emergency use of the Assurance SARS-CoV-2 Panel DTC as a direct to consumer product for testing of anterior nasal swab specimens self-collected at home." PUR-PREP-00007885; *see* Scarpati Decl. at ¶ 11, Ex. 9.

**RESPONSE:** Admitted.

37. The FDA Database entry for the "Assurance SARS-CoV-2 Panel DTC" (EUA No. 210025) includes an "EUA Summary" which lists components in the "test kit sent to users,"

including a "Flocked Nasal Swab" component, described as a "Flocked Nasal Swab" provided by "Puritan" or another supplier. PUR-PREP-00007875; *see* Scarpati Decl. at ¶ 12, Ex. 10.

**RESPONSE:** Qualified. Exhibit 10 of the Scarpati Declaration states that the material supplier for flocked nasal swabs will be either Puritan or Miraclean. *See* ECF 289-16 (Ex. 10) at PUR-PREP-00007875. Elsewhere, the document states that "[t]he swabs will be manufactured by Miraclean, Puritan, or equivalent product manufacturer." *See id.* at PUR-PREP-00007877. The document provides no indication of how many flocked nasal swabs (if any) were provided by any supplier. *Id.*

38. The FDA Database indicates that the "ID NOW COVID-19" device, marked by Abbot Diagnostics, received EUA No. 200074 on March 27, 2020 (see PUR-PREP-00008137, PUR-PREP-00000066), and that the original EUA "letter authoriz[ed] the emergency use of [this] product for the qualitative detection of nucleic acid from the SARS-CoV-2 virus in direct nasal, nasopharyngeal or throat swabs from individuals who are suspected of COVID-19 by their healthcare provider within the first seven days of the onset of symptoms[.]" PUR-PREP-00000066; see Scarpati Decl. at ¶ 13, Ex. 11.

**RESPONSE:** Admitted.

39. The EUA letter for the "ID NOW COVID-19" device (EUA No. 200074) includes a section titled, "Scope of Authorization," which states that "[t]esting of direct nasal, nasopharyngeal or throat swabs from individuals using your product run on the ID NOW Instrument, as outlined in the 'ID NOW COVID-19' Package Insert and 'ID NOW COVID-19 Quick Reference Guide,' is authorized to be used in laboratories certified under CLIA that meet the requirements to perform high, moderate, or waived complexity tests." PUR-PREP-00000068-69.

16

**RESPONSE:** Qualified. The IFU or Package Insert states, "[f]or optimal test performance, use the swabs provided in the test kit. Alternatively, foam, polyester, HydraFlock® and nylon flocked throat swabs can be used to collect throat swab samples." ECF 289-18 (Ex. 12) at PUR-PREP-00007810. In other words, the IFU does not confirm whether Puritan's HydraFlock® swabs are included within the test kit. *See id.* Separately, the product approved under emergency use authorization is Abbott Diagnostics Scarborough, Inc.'s diagnostic test, ID NOW COVID-19, not Puritan's HydraFlock® swabs. *See* ECF 289-18 (Ex. 12) at PUR-PREP-00007810; ECF 289-17 (Ex. 11) at PUR-PREP-00000068-69.

**40**. The EUA letter for the "ID NOW COVID-19" device (EUA No. 200074) explains that "[t]he above described product, when accompanied by the 'ID NOW COVID-19' Package Insert . . . is authorized to be distributed to and used by authorized labs under this EUA[.]" PUR-PREP-00000069.

**RESPONSE:** Admitted.

**41**. The EUA letter for the "ID NOW COVID-19" device (EUA No. 200074) explains that the "Package Insert" referred to in this document is also referred to as the "Instructions for Use" or "IFU." PUR-PREP-00000067, n. 3.

**RESPONSE:** Qualified. Note 3 on PUR-PREP-00000067 includes the language "Instructions for Use (IFU or Package Insert)." The document contains no explanation to this effect nor language addressing additional references to "Package Insert" within the document. *See* ECF 289-17 (Ex. 11) at PUR-PREP-00000067 n.3.

**42**. The FDA Database provides a link to download an archived copy of the approved Instructions for USE ("IFU") referenced in EUA No. 200074. *See* PUR-PREP-00008137.

**RESPONSE:** Qualified. The FDA Database provides a link to download an archived copy of the approved Instructions for Use ("IFU") related to Abbott Diagnostics Scarborough, Inc.'s diagnostic test, ID NOW COVID-19. ECF 289-8 (Ex. 2) at PUR-PREP-00008137. Further, the date the EUA was issued or last updated for Abbott Diagnostics Scarborough, Inc., was 08/27/2021. *Id.*

**43**. The IFU for the "ID NOW COVID-19" device (EUA No. 200074) includes a "SPECIMEN COLLECTION AND HANDLING" section which states that Puritan's "HydraFlock® and nylon flocked throat swabs can be used to collect throat swab samples." PUR-PREP-00007809; see Scarpati Decl. at ¶ 14, Ex. 12.

**RESPONSE:** Qualified. The relevant language in its entirety states that "[f]or optimal test performance, use the swabs provided in the test kit. Alternatively, foam, polyester, HydraFlock® and nylon flocked throat swabs can be used to collect throat swab samples." ECF 289-18 (Ex. 12) at PUR-PREP-00007810. Taken in context, the IFU does not confirm whether Puritan's HydraFlock® swabs are included within the test kit. *Id.* Further, EUA No. 200074 is not identified within the document. *See generally* ECF 289-18 (Ex. 12).

**44**. The IFU for the "ID NOW COVID-19" device (EUA No. 200074) includes a "SPECIMEN COLLECTION AND HANDLING" section which states that Puritan's "HydraFlock® Flocked swab (standard tip)" and Puritan's "HydraFlock® Flocked swab (mini tip) . . . can be used to collect nasal swab samples" for use with this device. PUR-PREP-00007810.

**RESPONSE:** Qualified. The relevant language of the IFU states:

For optimal test performance, use the swabs provided in the test kit. Alternatively, rayon, foam, HydraFlock® Flocked swab (standard tip), HydraFlock® Flocked swab (mini tip), Copan Mini Tip Flocked Swab, or Copan Standard Flocked swabs can be used to collect nasal swab samples. Puritan PurFlock Standard Tip Ultra Flocked Swabs, Puritan PurFlock Mini Tip Ultra Flocked Swabs and Copan Standard Rayon Tip Swabs are not suitable for use in this assay.

ECF 289-18 (Ex. 12) at PUR-PREP-00007810. The entire quote in context draws a distinction between several types of Puritan swabs which cannot be used in the assay. *Id.* Additionally, the entire quote does not demonstrate that Puritan swabs were ever required for use with the ID NOW COVID-19 Device. *Id.* Further, EUA No. 200074 is not identified within the document. *See generally* ECF 289-18 (Ex. 12).

**45**. The U.S. Department of Health and Human Services issued Advisory Opinion 20-04 on the PREP Act and the Secretary's Declaration Under the Act on Oct. 22, 2020, which was modified on Oct. 23, 2020. *See* Scarpati Decl. at ¶ 15, Ex. 13. A copy of this opinion is publicly available on a U.S. government webpage at the time of this filing. *See id.*

**RESPONSE:** Admitted.

**46**. Former President Trump visited Puritan's manufacturing facility in Guilford, Maine on June 5, 2020. *See* Scarpati Decl. at ¶ 16, Ex. 14. A transcript of President Trump's remarks is publicly available on a U.S. government webpage at the time of this filing. *See id.*

**RESPONSE:** Admitted.

**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS ("SOAF")**

1.      None of the documents cited by Puritan in the "P3 CONTRACT FACTS" section of "DEFENDANTS' STATEMENT OF MATERIAL FACTS" (ECF No. 289) demonstrate that any Puritan flocked swabs accused of patent infringement were ever administered to or used by a person during any relevant time period under the PREP Act. *See generally*, Scarpati Decl., Exhibits 1-14 and Templet Decl., Exhibits 1-4.

2.      None of the documents cited by Puritan in the "P3 CONTRACT FACTS" section of "DEFENDANTS' STATEMENT OF MATERIAL FACTS" (ECF No. 289) demonstrate that Puritan made or sold any swabs that were actually used as a Covid-19 countermeasure. *See generally,* Scarpati Decl., Exhibits 1-14 and Templet Decl., Exhibits 1-4.

3.      None of the documents cited by Puritan in the "P3 CONTRACT FACTS" section of "DEFENDANTS' STATEMENT OF MATERIAL FACTS" (ECF No. 289) demonstrate that Puritan made or sold any swabs that were actually included as a component of a Covid-19 countermeasure. *See generally,* Scarpati Decl., Exhibits 1-14 and Templet Decl., Exhibits 1-4.

4.      None of the documents referenced in Puritan's SOFs provide any evidence of the administration or use of any purported countermeasure (e.g., diagnostic test) during the relevant time period that allegedly included a Puritan flocked swab. *See generally,* Scarpati Decl., Exhibits 1-14 and Templet Decl., Exhibits 1-4.

## I.    <u>HISTORY OF THE PREP ACT</u>

5.      The initial legislative proposals that laid the groundwork for the PREP Act include the Public Health Security and Bioterrorism Preparedness and Response Act of 2002, Pub. L. No. 107-188, 116 Stat. 594 (2002). *See* Newman Decl. at ¶ 3, (Ex. A).

6.      The initial legislative proposals that laid the groundwork for the PREP Act includes the Project BioShield Act of 2004, Pub. L. No. 108-276, 118 Stat. 835 (2004).  *See* Newman Decl. at ¶ 4, (Ex. B).

7.      The PREP Act's legislative history includes the *Biodefense and Pandemic Vaccine and Drug Development Act*, informally called BioShield II. S. 975, 109th Cong. 2005. *See* Newman Decl. at ¶ 5, (Ex. C).

8.      The PREP Act's legislative history includes the *Roundtable Discussion: Preparing a National BioDefense: S. 975: Hearing Before the Subcommittee on Bioterrorism and Public Health Preparedness*, S. Hrg. 109-210 (2005). *See* Newman Decl. at ¶ 6, (Ex. D).

9.      The PREP Act is identified as Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico and Pandemic Influenza Act, 2006, Pub. L. 109-148, 119 Stat. 2818 (2005). *See* Newman Decl. at ¶ 7, (Ex. E).

10.      151 CONG. REC. 30725 (2005) is a congressional record that discusses the

legislative history of the PREP Act. *See* Newman Decl. at ¶ 8, (Ex. F).

11.      The PREP Act defines the scope of claims for loss as:

> The immunity under paragraph (1) applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

*See* 42 U.S.C. § 247d-6d(a)(2)(B), https://www.law.cornell.edu/uscode/text/42/247d-6d (last

visited Nov. 16, 2024).

12.      Senator Lieberman stated during the Senate Hearing:

> …the best way to combat the threat of bioterrorism is to utilize one of America's greatest strengths, ***which is our innovational and entrepreneurial talent***. The BioShield law that was enacted last year takes the first step, but … I am afraid will not produce the results we need. The concepts in our legislation, S. 975, including ***tax, intellectual property and liability reforms***, we are confident will give us important additional tools to enlist the industry in this vital research.

*See* S. Hrg. 109-210 at 2 (Statement of Sen. Lieberman) (emphasis added); Newman Decl. at ¶ 6,

(Ex. D).

13.      Senator Hatch stated on the congressional record:

> ***Unfortunately***, from my perspective, ***the bill that resulted from the HELP markup did not contain the intellectual property and tax provisions*** that Senator Lieberman and I have long advocated. Such is the reality of the dance of legislation. But, as has developed in the provisions related to the guaranteed market, ***liability***, and compensation, we believe that the day will come when these ideas from our original legislation are also seen as meritorious.

*See* 151 CONG. REC. 30,725 (2005) (statement by Sen. Hatch) (emphasis added); Newman Decl.

at ¶ 8, (Ex. F).

## II.   **THE PREP ACT**

14.   The PREP Act states pursuant to 42 U.S.C. § 247d-6d(b)(1):

> Authority to issue declaration Subject to paragraph (2), if the Secretary makes a determination that a ***disease or other health condition or other threat to health constitutes a public health emergency***, or that there is a credible risk that the disease, condition, or threat may in the future constitute such an emergency, the Secretary may make a declaration, through publication in the Federal Register, recommending, under conditions as the Secretary may specify, the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, and stating that subsection (a) is in effect with respect to the activities so recommended.

*Id.* (emphasis added).

15.   The PREP Act states pursuant to 42 U.S.C. § 247d-6d(a)(1):

> Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to ***all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure*** if a declaration under subsection (b) has been issued with respect to such countermeasure.

*Id.* (emphasis added).

16.   The PREP Act states pursuant to 42 U.S.C. § 247d-6d(a)(2)(A):

> (i) death; (ii) physical, mental, or emotional injury, illness, disability, or condition; (iii) fear of physical, mental, or emotional injury, illness, disability, or condition, including any need for medical monitoring; and (iv) loss of or damage to property, including business interruption loss.

*Id.*

17.   The PREP Act states pursuant to 42 U.S.C. § 247d-6d(a)(3) (A)-(C) states that:

> Subject to the other provisions of this section, immunity under paragraph (1) with respect to a covered countermeasure ***applies only if*** --
>
> (A) the ***countermeasure was administered or used*** during the effective period of the declaration that was issued under subsection (b)of this section with respect to the countermeasure;

(B) the ***countermeasure was administered or used*** for the category of diseases, health conditions, or threats to health specified in the declaration; and

(C) in addition, in the case of a covered person who is a program planner or qualified person with respect to the ***administration or use of*** the countermeasure, the countermeasure was ***administered to or used*** by an individual who [was in a population or geographic area specified in the declaration].

*Id.* (emphasis added).

18.    42 U.S.C. § 247d-6e, creates a covered countermeasure process:

Upon the issuance by the Secretary of a declaration under section 319F-3(b) [42 USCS § 247d-6d(b)], there is hereby established in the Treasury an emergency fund designated as the "Covered Countermeasure Process Fund" for purposes of providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration, which Fund shall consist of such amounts designated as emergency appropriations under section 402 of H. Con. Res. 95 of the 109th Congress [unclassified], this emergency designation shall remain in effect through October 1, 2006.

*Id.*

19.    42 C.F.R. § 10.20(c) (2020) states "the requester must demonstrate that ***the injury occurred as the direct result of the administration or use of a covered countermeasure***. Such proof must be based on compelling, reliable, valid, medical and scientific evidence."

20.    HHS published an Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration Under the Act, HHS (Apr. 17, 2020, as modified May. 19, 2020) at 2, https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/prep-act-advisory-opinion-hhs-ogc.pdf ("PREP Act immunity (exempting preemption) ***is also limited to claims for personal injury or damage to property***.") (emphasis added).

23

## III.    PREP ACT AND PATENT INDEMNITY CONTRACTS

21.    Puritan is contractually obligated to indemnify the government for any claims of

patent infringement. *See* ECF 289-2 (Ex. 1) at PUR-PREP-00007938.

22.    Puritan's contract (Contract No. FA8730-20-C-0056) states in part:

> (h) Patent indemnity. The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

ECF 289-2 (Ex. 1) at PUR-PREP-00007938.

23.    On July 6, 2020, ▮▮▮▮▮▮ sent an email to ▮▮▮▮▮▮ ▮▮▮▮ stating:

See Newman Decl. at ¶ 14, (Ex. L) at PUR-PREP-00008544.

24.    On July 16, 2020, ▮▮▮▮▮ sent the government's contracting officer an

email that stated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ *See* Newman Decl. at ¶ 15, (Ex. M) at PUR-PREP-00008475.

25.    On July 17, 2020, Puritan's attorney sent the government's contracting officer an

email that said in part:





*See* Newman Decl. at ¶ 16, (Ex. N) at PUR-PREP-00011923- PUR-PREP-00011924.

26.    In response to an email from Puritan's attorney, a contracting officer followed up and told Puritan:



*See* Newman Decl. at ¶17, (Ex. O) at PUR-PREP-00011915.

27.    The first version of the contract Puritan signed with the government to manufacture flocked swabs at P3 did not contain a PREP Act provision. *See* Newman Decl. at ¶ 18, (Ex. P) at PUR-PREP-00011664.

28.    On July 30, 2020, the Air Force sent Puritan confirmation of the fully executed Undefinitized Contract Action (UCA). *See* Newman Decl. at ¶ 19, (Ex. Q) at PUR-PREP-00000815-816. ██████████ forwarded the document to ██████████ ██████████ *Id.*

29.    The Air Force added language referencing the PREP Act to the P3 contract with Puritan in October of 2020 after Puritan's attorney had sent draft proposed language and after Puritan requested that modification to the P3 contract. *See* Newman Decl. at ¶ 20, (Ex. R) at PUR-PREP-00011451; Newman Decl. at ¶ 21, (Ex. S) at PUR-PREP-00011452-PUR-PREP-00011458.

30.    On July 17, 2020, ██████████ and a Government Contracting Officer discussed over email the PREP Act. *See* Newman Decl. at ¶ 16, (Ex. N) PUR-PREP-00011923-PUR-PREP-00011924.

Dated: November 18, 2024

Respectfully submitted,

*/s/ Emily P. Crowley*
Emily P. Crowley
Richard P. Olson
CURTIS THAXTER LLC
One Canal Plaza, Suite 1000
P.O. Box 7320
Portland, ME 04112-7320
(207) 774-9000
ECrowley@curtisthaxter.com
ROlson@curtisthaxter.com

*Pro Hac Vice* Filed:
James M. Wodarski
Michael C. Newman
Michael Renaud
Peter J. Cuomo
Matthew A. Karambelas
Courtney Herndon
Gabriella J. Flick
Mintz, Levin, Cohn, Ferris, Glovsky and
Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
JWodarski@mintz.com
MCNewman@mintz.com
MTRenaud@mintz.com
PJCuomo@mintz.com
MAKarambelas@mintz.com
CHerndon@mintz.com
GJFlick@mintz.com

*Counsel for Plaintiffs Copan Italia S.p.A. and Copan Diagnostics, Inc.*

26