# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| COPAN ITALIA S.P.A., and<br>COPAN DIAGNOSTICS, INC.,<br><br>                  Plaintiffs,<br><br>      v.<br><br>PURITAN MEDICAL PRODUCTS<br>COMPANY LLC, PURITAN DIAGNOSTICS<br>LLC, HARDWOOD PRODUCTS COMPANY<br>LP, and HARDWOOD PRODUCTS<br>COMPANY LLC,<br><br>                  Defendants. | C.A. No. 1:18-cv-00218-SDN<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF IMMUNITY UNDER THE PUBLIC READINESS AND EMERGENCY PREPAREDNESS ACT

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ...................................................................................................... 1

    A.  Copan's legislative history argument does not relate to the PREP Act. ...........................1

    B.  The legislative history shows Congress's intent to "not let a patent stand in the way of saving American lives." ...................................................................................................2

    C.  PREP Act immunity is not limited to claims of physical harm from physical "administration to or use by an individual" of a covered countermeasure. .....................4

        1.  There is no genuine issue of material fact that Puritan's flocked swabs were administered or used during the declared emergency period................................. 4

        2.  PREP Act immunity does not require physical harm. ........................................... 6

        3.  The litigation strategies of "similarly situated" litigants are irrelevant. ................ 7

    D.  The record is sufficient for summary judgment in Puritan's favor. ...................................8

    E.  The plain reading of the PREP Act is constitutional.........................................................8

III. CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Smith & Wesson, Inc.*,
  40 F.4th 43 (1st Cir. 2022)..................................................................................................1

*Christy, Inc. v. U.S.*,
  141 Fed. Cl. 641 (2019) ......................................................................................................9

*Jones v. U-Haul Co. of Mass. & Ohio Inc.*,
  16 F. Supp. 3d 922 (S.D. Ohio 2014) ................................................................................8

*Maney v. Brown*,
  91 F.4th 1296 (9th Cir. 2024) ............................................................................................3

*Martin v. Petersen Health Ops., LLC*,
  37 F.4th 1210 (7th Cir. 2022) ............................................................................................7

*Mockeridge v. Alcona Cnty. by Bd. of Commissioners*,
  636 F. Supp. 3d 790 (E.D. Mich. 2022)............................................................................8

*Oil States Energy v. Greene's Energy Grp.*,
  138 S.Ct. 1365 (2018).....................................................................................................7, 9

*Pleasantdale Condos., LLC v. Wakefield*,
  37 F.4th 728 (1st Cir. 2022)...............................................................................................7

*Redd v. Amazon.com, Inc.*,
  No. 20-C-6485, 2024 WL 2831463 (N.D. Ill. June 4, 2024)..........................................6, 7

*Sony Corp. of Am. v. Universal Studios, Inc.*,
  464 U.S. 417 (1984)............................................................................................................9

*Viscito v. Nat'l Plan. Corp.*,
  34 F.4th 78 (1st Cir. 2022).................................................................................................8

*Woodlands Senior Living, LLC v. MAS Med. Staffing Corp.*,
  502 F. Supp. 3d 564 (D. Me. 2020) ...................................................................................8

**Statutes**

28 U.S.C. § 1498..........................................................................................................................9, 10

42 U.S.C. § 247d-6d .............................................................................................................. *passim*

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| Puritan | Defendants Puritan Medical Products Company LLC, Puritan Diagnostics LLC, Hardwood Products Company LP, and Hardwood Products Company LLC |
| Copan | Plaintiffs Copan Italia S.p.A. and Copan Diagnostics, Inc. |
| PREP Act | Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d |
| HHS | U.S. Department of Health and Human Services |
| Secretary | Secretary of the U.S. Department of Health and Human Services |
| EUA | Emergency Use Authorization |
| USITC | U.S. International Trade Commission |
| FDA | U.S. Food and Drug Administration |
| P3 Contract | Contract No. FA8730-20-C-0056 |
| DPA | Defense Production Act, 50 U.S.C. § 4501 |
| Br. | Puritan's Memorandum of Law in Support of its Motion for Partial Summary Judgment (ECF No. 288) |
| Opp. | Copan's Brief in Opposition to Puritan's Motion for Summary Judgment (ECF No. 295) |
| SOF | Puritan's Statement of Facts |
| SOAF | Copan's Statement of Additional Facts |

**Note: All emphases in this memorandum are added, unless otherwise noted.**

## I.    <u>INTRODUCTION</u>

The PREP Act provides in plain English that immunity applies to "all claims for loss" with a "sole exception" for "death or serious physical injury." 42 U.S.C. § 247d-6d(a)(1), (d)(1). Undeterred, Copan asks this Court "to reject the evidence of your eyes and ears." Orwell, *1984*. Instead, Copan invents a parallel universe where exceptions are plentiful, not sole, and rebuttable presumptions do not exist.

Copan spills a lot of ink to persuade the Court to read the PREP Act narrowly, which conflicts with the plain language of the statute. Rather than address the issues raised by Puritan, Copan offers a sideshow: first, a tour of irrelevant legislative history, then a meritless constitutionality argument, and last, a rewrite of PREP Act immunity limited to personal injury claims. Copan's refusal to mention the "sole exception" statutory language, the presumption of use, and other aspects of Puritan's arguments, belies the weakness of Copan's position.

The PREP Act was enacted to promote "liability protections for pandemic and epidemic products and security countermeasures." 42 U.S.C. § 247d-6d (section heading). Congress wanted manufacturers of vaccines, diagnostic tools, and other countermeasures to make life-saving equipment without liability speedbumps. If patent infringement is not part of the immunity, then manufacturers may delay (or refuse) to help in a pandemic, frustrating Congressional intent.

The language of the PREP Act and the record here support summary judgment for Puritan.

## II.    <u>ARGUMENT</u>

### A.    Copan's legislative history argument does not relate to the PREP Act.

Faced with statutory text clear on its face and devastating in its application (*i.e.*, "all claims" means all claims), Copan invests the first four pages of its brief on legislative history that is irrelevant to construing the clear language of the PREP Act. "Where the statutory language is unambiguous and the statutory scheme is coherent and consistent, our inquiry must cease." *Baker*

1

*v. Smith & Wesson, Inc.*, 40 F.4th 43, 50 (1st Cir. 2022) (cleaned up).

The PREP Act provides in unambiguous language that immunity applies to manufacturers:

> (1) . . . ***a covered person shall be immune from suit and liability*** under Federal . . . law ***with respect to all claims for loss*** caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration . . . has been issued . . . .

42 U.S.C. § 247d-6d(a)(1); *id.* at (i)(2)(B)(i) (defining "covered person" to include manufacturers).

Congress, anticipating potential litigation over crucial statutory terms, meticulously defined the precise scope of immunity in a provision labeled "scope."

> (B) Scope—The immunity under paragraph (1) applies to ***any claim for loss that has a causal relationship*** with the administration to or use by an individual of a covered countermeasure, ***including a causal relationship with*** the design, development, clinical testing or investigation, ***manufacture***, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

*Id.* at (a)(2)(B). Under the literal interpretation of this language, immunity extends to any claim for loss that has a direct causal connection with the "manufacture" or "sale" of a covered countermeasure. *Id*. Therefore, Copan's claims of infringement are directly related to Puritan's manufacturing activities and sale of flocked swabs (a covered countermeasure). Manufacturing is explicitly a basis for immunity.

Copan fails to address or analyze the Scope provision. Instead, Copan disregards this clear language and concentrates on the legislative history of unenacted bills. Yet the draft language removed from earlier bills that did not get enacted is irrelevant to the PREP Act.

**B.     The legislative history shows Congress's intent to "not let a patent stand in the way of saving American lives."**

Even if it were proper to entertain legislative history here, that history is fatal to Copan's argument. Copan asserts that the origin story of the PREP Act is told, in part, in the history of S. 975 ("Project BioShield II") that was not passed by Congress. S. 975 tells a very different story.

S. 975 was introduced by Senator Leiberman and defended by him and Senator Hatch at a roundtable in 2005. *See* SOAF ¶ 8. The draft included a patent term extension, tax breaks, and an immunity provision that was limited compared to that ultimately enacted in the PREP Act:

> Healthcare personnel, volunteers, and other workers providing emergency medical or triage care in field settings, alternative treatment facilities, and in vaccination or medication distribution settings shall be immune from claim for loss of property (including interruption or other types of indirect losses), personal injury, or death.

SOAF ¶ 7 (S. 975 § 1204 at Section 319F-10(a)(2)).[1]

Senator Schumer criticized the patent term extension. *See* SOAF ¶ 8 (Ex. D at 10) ("The first and most egregious problem is the wild card patent extension[.]"). He also had a different vision of the role of patents during a public health emergency: "So if there are times of national emergency, ***we cannot let a patent stand in the way of saving American lives***." *Id.* at 12. His view prevailed and is reflected in the text of the PREP Act, which grants immunity from "suit and liability . . . ***with respect to all claims for loss***," including patent claims. 42 U.S.C. § 247d-6d(a)(1).

Copan's briefing on the legislative history and purpose of the PREP Act is inaccurate and misleading. Copan asserts that "[b]oth the PREP Act and the Patent Act aim to encourage innovation," and quotes language from the S. 975 roundtable as support: "('...and ***[the PREP Act]*** BioShield II seeks to inspire innovation on behalf of neglected markets worldwide.')" Opp. at 10 (quoting "Newman Decl., Ex. D at 2"). The insertion of "[the PREP Act]" is misleading. In fact, the PREP Act and BioShield II were different pieces of legislation with different purposes; one was enacted, one was rejected. All statements by Senator Hatch cited by Copan refer solely to BioShield II, which was ***not*** enacted into law after heavy roundtable criticism. The purpose and intent of the PREP Act is best revealed by its text.

---

[1] This unenacted provision shows that Congress knew how to draft immunity narrowly. The fact that Congress went with the broadest language possible ("all claims for loss"), shows that Congress intentionally rejected narrow immunity protections. Copan asks this Court to rewrite the PREP Act's "***sweeping*** statutory" immunity with S. 975's narrow immunity. *Maney v. Brown*, 91 F.4th 1296, 1302 (9th Cir. 2024) (citation omitted).

Copan contends that a straightforward interpretation of the PREP Act is "unreasonable." Opp. at 1, 10, 11. But Copan's interpretation would "let a patent stand in the way of saving American lives." SOAF ¶ 8 (Ex. D at 12). Congress's enacted statutory language is vindicated by this case. Puritan was a reluctant partner in the Government's pandemic response and hesitated to establish a new flocked swab factory during this ongoing patent suit absent the promise of PREP Act immunity. *See* ECF No. 296-15 (Newman Decl., Ex. N at 1) (email from Puritan's counsel to the Air Force requesting that a PREP Act immunity clause be added to the undefinitized P3 Contract). The Government's assurance that the PREP Act applies was crucial to Puritan's willingness to proceed: the PREP Act provision in the P3 Contract was one of only two reasons the parties first entered into an undefinitized contract, which provided time for obtaining the required high-level Government approvals necessary to incorporate the PREP Act provisions in the final, definitized contract. *See* SOF ¶ 15, Templet Decl. ¶ 5, Ex. 4.

### C. PREP Act immunity is not limited to claims of physical harm from physical "administration to or use by an individual" of a covered countermeasure.

#### 1. There is no genuine issue of material fact that Puritan's flocked swabs were administered or used during the declared emergency period.

Copan ignores the PREP Act's "rebuttable presumption that ***any administration or use***, during the effective period of the emergency declaration . . . of a covered countermeasure shall have been for the category or categories of diseases, health conditions, or threats to health with respect to which such declaration was issued." 42 U.S.C. § 247d-6d(a)(6). Thus, ***any*** use of Puritan's swabs from the start of the Declaration to the end of the Declaration (December 31, 2025),[2] is presumptively connected to the COVID-19 pandemic and covered by the PREP Act. The presumption stands unrebutted by Copan anywhere in its papers.

---

[2] This date accounts for the extra 12 months of immunity granted to manufacturers of covered countermeasures.

In addition to this presumption, the record establishes that Puritan's accused HydraFlock® and PurFlock® Ultra swabs were listed as components of multiple COVID-19 diagnostic kits granted EUA during the declared emergency. *See* SOF ¶¶ 26–44. Puritan's swabs therefore qualify as a Covered Countermeasure under the PREP Act, alone and as components of COVID-19 test kits. *See* Br. at 10–12. Copan knows that Puritan's flocked swabs have been used throughout the Declaration for COVID-19 testing. Indeed, Copan cited "Puritan's domestic production capacity of flocked swabs used in COVID-19 diagnostic tests" in briefing at the International Trade Commission ("ITC"), as proof that an adequate domestic supply of flocked swabs for COVID-19 testing was available.[3] Copan cannot argue to the ITC that Puritan's accused flocked swabs were used in diagnostic tests and then dispute the same fact here.

So the record here includes: (1) an unrebutted statutory presumption that all use of Puritan's flocked swabs during the Declaration were used for COVID-19 testing; (2) evidence that Puritan's flocked swabs were listed components of multiple COVID-19 test kits granted EUAs; and (3) an admission by Copan that Puritan's flocked swabs were used in COVID-19 test kits. And Puritan has produced sales records for flocked swabs during the Declaration. Copan failed to rebut the statutory presumption of use. Thus, there is no genuine dispute that all of Puritan's flocked swabs were used for COVID-19 testing during the Declaration.

Copan's assertion that its Complaint includes claims "that arise prior to, and are independent from, any use of the infringing product" (Opp. at 16), is subject to the same analysis. Puritan's flocked swabs are Covered Countermeasures with a presumption of use for COVID-19 during the Declaration. Thus, immunity applies to any claim for loss that has "a causal relationship with the . . .

---

[3] *See* Reply Post-Hearing Brief of Complainants Copan Italia S.p.A. and Copan Industries, Inc. at 85, ITC Inv. No. 337-TA-1279 (Aug. 9, 2022) (citing "Puritan's domestic production capacity of flocked swabs used in COVID-19 diagnostic tests" as evidence that an adequate domestic supply of flocked swabs for COVID-19 testing was available). Copan's litigation-manufactured doubts about whether Puritan's flocked swabs are used for COVID-19 testing are not credible.

manufacture" of a Covered Countermeasure. 42 U.S.C. § 247d-6d(a)(2)(B). Copan's attempt to distinguish patent method claims and apparatus claims is irrelevant to PREP Act immunity.

### 2.    PREP Act immunity does not require physical harm.

Ignoring the express "sole exception" in the statute, Copan adds new exceptions so that PREP Act immunity applies only to claims involving physical harm. *See* Opp. at 16–18. Copan's interpretation renders meaningless the word "sole" in 42 U.S.C. § 247d-6d(d)(1). Contrary to Copan's argument, the plain language of the PREP Act immunizes manufacturers of covered countermeasures from "***all*** claims for loss," including "any claim for loss that has a causal relationship with the . . . manufacture . . . of such countermeasure." *Id*. at (a)(1), (a)(2)(B).

Copan's argument limiting PREP Act immunity to claims for physical harm was recently rejected in *Redd v. Amazon.com, Inc.*, No. 20-C-6485, 2024 WL 2831463 (N.D. Ill. June 4, 2024). In that case, Redd sued for a privacy loss (under Illinois' Biometric Information Privacy Act ("BIPA")) caused by her employer's use of a thermal camera "to check employees' temperatures and thereby reduce the risk of COVID-19 transmission" without informed consent. *Id.* at *1. Because this was ***not*** a claim for physical injury, "Redd argue[d] that her BIPA claims fall outside the scope of PREP Act immunity because the immunity applies only to 'certain tort claims[.]'" *Id.* at *2. The court rejected Redd's effort to limit PREP Act immunity:

> The PREP Act includes one exception to its grant of immunity for covered countermeasures administered by covered persons. The "sole exception" to the immunity granted under the PREP Act is a federal action for "death or serious physical injury proximately caused by willful misconduct." That exception does not exempt BIPA statutory violations from the Act's immunity protections. Because Redd does not allege death or serious physical injury, the only exception to the Act's immunity does not include Redd's BIPA claims.

*Id.* at *3 (cleaned up). The court granted summary judgment because "[n]othing in the [PREP] Act limits the scope of its immunity to 'certain tort claims.' . . . " *Id.* The court's holding applies equally

to Copan's argument: "Redd's interpretation of what constitutes a covered 'loss' under the PREP Act contravenes the Act's express language." *Id.*

Next, Copan argues that patents claims are special. *See* Opp. at 6–21. "Patents convey only a specific form of property right—a public franchise . . . 'entitled to protection as any other property, consisting of a franchise.'" *Oil States Energy v. Greene's Energy Grp.*, 138 S.Ct. 1365, 135 (2018) (citation omitted). But Copan's patent claims are claims for "loss" because Copan seeks damages from the alleged loss of its patent monopoly (i.e., the public franchise granted by the asserted patents). The existence of a "loss" beyond pure monetary damages is highlighted by Copan's request for injunctive relief in its original complaint. If Congress intended to exclude patent infringement claims from "all claims for loss," it would have done so explicitly.[4]

A logical syllogism is helpful. The statutory term "loss" means "***any*** type of loss," including "***loss of or damage to property***." *Id.* at (a)(2)(A). Copan admits that "[p]atents are personal ***property***" (Opp. at 7) and Puritan's infringement is a "taking [of] Copan's property" (*id.* at 1). Therefore, the PREP Act expressly immunizes the property loss alleged by Copan.

### 3.  The litigation strategies of "similarly situated" litigants are irrelevant.

Copan highlights cases where defendants declined to invoke PREP Act immunity. *See* Opp. at 19–21. Litigation strategies of non-parties in unrelated cases do not matter. Pharmaceutical companies like Moderna and Pfizer obviously declined to assert immunity because they own and assert patents related to vaccines and pharmaceuticals potentially subject to immunity.

---

[4] Rejecting logic, Copan insists that "[t]he PREP Act only immunizes claims related to physical harm" (Opp. at 12), and then proclaims that HHS's General Counsel "agrees with Copan's interpretation." *Id.* at 23 (citing SOAF ¶ 20). Not true. The cited advisory opinion concedes that it does not "bind [HHS] or the federal courts" and it "does not have the force or effect of law." SOAF ¶ 20 at 3. *Redd* explained that this "General Counsel's opinion is contrary to the plain text of the Act," and rejected arguments similar to what Copan offers. *Redd*, 2024 WL 2831463, at *4. Another court also rejected advisory opinions because "[t]hey were not issued after notice and comment rulemaking," "they do not control the federal judiciary," and "[t]he General Counsel's advisory opinions are not authorized by § 247d-6d(b)." *Martin v. Petersen Health Ops., LLC*, 37 F.4th 1210, 1214 (7th Cir. 2022).

### D.    The record is sufficient for summary judgment in Puritan's favor.

Once the moving party meets its summary judgment burden, the nonmovant must then put forth specific facts to establish a genuine dispute of material fact. *See Pleasantdale Condos., LLC v. Wakefield*, 37 F.4th 728, 733 (1st Cir. 2022).

Copan accuses Puritan of "fail[ing] to show what happened to swabs made at P3," speculating whether Puritan has stockpiled swabs for future pandemics and whether any were used for purposes unrelated to COVID-19. Opp. at 21–25. But mere speculation is not enough to create a genuine issue of material fact. *See Viscito v. Nat'l Plan. Corp.*, 34 F.4th 78, 83 (1st Cir. 2022) ("[C]onclusory allegations, improbable inferences, and unsupported speculation" by the non-movant must be ignored (citation omitted)). This is especially true when there is a statutory presumption favoring Puritan. The record establishes that the accused flocked swabs received EUAs from FDA as components of multiple COVID-19 test kits, Copan admitted that Puritan flocked swabs were used in COVID-19 test kits during the Declaration, and Puritan has a statutory presumption of use that Copan has not tried to rebut. *See* Section II.C.1, *supra*. Put simply, the record viewed in the light most favorable to Copan fails to create a triable issue of fact as to the use of flocked swabs within the relevant time period.

### E.    The plain reading of the PREP Act is constitutional.

According to Copan, a plain reading the PREP Act renders it unconstitutional. *See* Opp. at 6–9. First, Federal Rule 5.1 required Copan to notify the Attorney General of its constitutional challenge to the PREP Act. Copan has not complied, despite being aware of this rule. *See* ECF No. 217 at 5 n.8 (noting Copan's failure to comply with the same rule after raising identical constitutionality arguments).[5] Still, the challenge fails on the merits.

---

[5] Courts have refused to consider constitutional arguments that don't comply with this rule. *See Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 941 (S.D. Ohio 2014) ("Because Jones has not filed that notice, the Court

The Constitution authorizes Congress to "promote the Progress of Science and useful Arts, by securing for limited Times to [Inventors] the exclusive Right to their respective [Discoveries]." U.S. Const. art. I, § 8, cl. 8. Courts have long recognized that "it is Congress that has been assigned the task of defining the scope of [rights] that should be granted to . . . inventors in order to give the public appropriate access to their work product." *Sony Corp. of Am. v. Universal Studios*, *Inc.*, 464 U.S. 417, 429 (1984). Copan's asserted patents were granted subject to existing federal law, which included the PREP Act, and thus Copan received a "limited Time[]" monopoly already defined (in part) by PREP Act immunity. 42 U.S.C. § 247d-6d(a)(1) (granting immunity "with respect to all claims for loss"). PREP Act immunity is a preexisting condition to Copan's patents. Indeed, Copan's patents issued subject to other defined limitations, such as a 20-year term. There can be no Fifth Amendment "Taking" of a property right that was never granted.

Copan tries to characterize immunity as unconstitutional by relying on nineteenth-century Supreme Court decisions to equate patent rights with land rights for Takings Clause purposes. *See* Opp. at 7. However, this approach is ill-considered and unoriginal. For instance, *Christy, Inc. v. U.S.*, 141 Fed. Cl. 641, 660 (2019), *aff'd*, 971 F.3d 1332 (Fed. Cir. 2020), and *Oil States*, 138 S.Ct. at 1376 n.3 (2018), both explain that utility patents are meaningfully different from land patents. The land-patent cases involved transactions in which all authority or control over the lands passed from the Executive Department, and their holdings do not apply when the Government retains some control over the right in question.

Nor do the present facts support a finding of property rights being taken. Copan's patents are subject to the constraints of existing law, including PREP Act immunity.

Copan's discussion of 28 U.S.C. § 1498 also misses the crux of the matter. Section 1498

---

will not consider Jones's constitutional arguments[.]"); *Mockeridge v. Alcona Cnty. by Bd. of Commissioners*, 636 F. Supp. 3d 790, 794 (E.D. Mich. 2022); *Woodlands Senior Living, LLC v. MAS Med. Staffing Corp.*, 502 F. Supp. 3d 564, 570 (D. Me. 2020), *vacated on other grounds*, 2021 WL 2043189 (D. Me. May 21, 2021) (ordering compliance).

waives sovereign immunity for patent and copyright disputes when the accused product is "used or manufactured by or for the United States without a license." 28 U.S.C. § 1498(a). On the other hand, the PREP Act grants immunity for "all claims for loss"—and does not require use or manufacture by or for the United States. Puritan's assertion of PREP Act immunity does not "trigger a springing act of eminent domain under 28 U.S.C. § 1498(a)," as suggested by Copan (with no support). Instead, the PREP Act confers immunity from suit and liability for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration . . . has been issued with respect to such countermeasure" during the specified period set by the Secretary. 42 U.S.C. § 247d-6d(a)(1). Moreover, PREP Act immunity is not limited to conduct related to a government contract or by government contractors.[6]

Puritan's manufacturing of flocked swabs is immune from liability, regardless of the existence of the P3 Contract. This immunity arises because Puritan's production of Covered Countermeasures meets two "means of distribution" requirements. *See* Br. at 16-19. The PREP Act immunity for manufacturers extends until December 31, 2025. *See id.* at 14. In contrast, Section 1498 could apply to flocked swabs manufactured or sold after December 31, 2025. It's important to note that all the asserted patents have expired. So there is no need for this Court to consider Section 1498 here.

## III.    <u>CONCLUSION</u>

For these reasons, the Court should grant summary judgment in Puritan's favor, holding that Copan's claims during the Declaration period are barred by PREP Act immunity.

---

[6] Copan's discussion of patent indemnity under FAR clause 52.227-3 (*see* Opp. at 8–9) is based on an email discussing a separate contract to buy swabs awarded by Assistant Secretary for Preparedness and Response, who administers the National Strategic Stockpile, and not the P3 Contract. Copan's arguments are misguided.

December 2, 2024

Respectfully submitted,

*/s/ Stacy O. Stitham*
Stacy O. Stitham
Peter J. Brann
David Swetnam-Burland
BRANN & ISAACSON
113 Lisbon Street
Lewiston, ME 04243-3070
(207) 786-3566
sstitham@brannlaw.com
pbrann@brannlaw.com
dsb@brannlaw.com

James H. Hulme
Janine A. Carlan
Taniel E. Anderson
Kevin R. Pinkney
Sara T. Schneider
ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006
(202) 857-6000
james.hulme@afslaw.com
janine.carlan@afslaw.com
taniel.anderson@afslaw.com
kevin.pinkney@afslaw.com
sara.schneider@afslaw.com

Michael L. Scarpati
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas
New York, NY 10019
(212)-484-3900
michael.scarpati@afslaw.com

Andrew R. Levin
ARENTFOX SCHIFF LLP
The Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199
(617) 973-6100
andrew.levin@afslaw.com

*Attorneys for Defendants*